**STATE of Utah, Plaintiff and Appellee,**

v.

**Channan S. SINGH, Defendant and Appellant.**

**No. 900497–CA.**

Court of Appeals of Utah.

Oct. 15, 1991.

Charles F. Loyd, Jr. and Ronald S. Fujino, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Kenneth A. Bronston, Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

GARFF, Judge:

Channan S. Singh appeals from a conviction of five counts of forgery, all second degree felonies under Utah Code Ann. § 76–6–501(3)(a) (1990), and one count of being a habitual criminal under Utah Code Ann. § 76–8–101 (1990). Defendant challenges the sufficiency of the evidence, and the trial court's refusal to instruct the jury on lesser included offenses. We affirm.

## FACTS

On November 27, 1989, West Valley City detective Holly Wright, working undercover with the Metro Sting Unit, followed an informant's tip to a West Valley City residence to buy a driver's license from Bobby Sanchez. When Detective Wright arrived, Sanchez was not at the residence, but defendant, Channan S. Singh, was present. Defendant sold two partially completed Driver License Temporary Counter Permits to Detective Wright for one hundred dollars. Each permit bore an examination test score, an expiration date, and signatures purporting to be those of an examiner and the director of the Driver License Division for the Department of Public Safety. The permits remained blank as to the name, height, weight, sex, eye color, hair color, and date of birth of the holder.

Subsequently, on December 7, 1989, Detective Wright visited defendant's apartment in Salt Lake City, where she purchased two more of the partially completed permits from defendant for one hundred dollars. When Detective Wright asked defendant how to fill out the missing information on the permits, he told her to print her name and address on the forms. When Detective Wright informed defendant that she did not want to use her real name because warrants had been issued for her arrest, defendant said: "Then put down any name you want." Defendant also instructed Detective Wright to make up a

nine-digit number and write it in the space for the license number.

On December 12, 1989, Detective Wright again met with defendant, this time at the undercover sting location, to purchase more temporary driver permits. Detective Wright informed defendant that she did not have the money for the permits, but that her brother, Chance, would arrive later to make payment. Chance was another undercover officer, Detective Carroll Mays, of the Salt Lake City Police Department. Defendant left fifteen blank permits at the sting location and returned later to collect payment.

Defendant told Detective Mays that he normally sold the permits for fifty dollars each, but that he was willing to sell all fifteen for four hundred dollars. He assured Detective Mays that, when completed, the permits worked well as identification, boasting that he himself had used one after being pulled over and had encountered "no problems." Detective Mays told defendant that he planned to resell the permits to others, but that he was reluctant to buy them because he did not know how to finish filling them out. Defendant then demonstrated how to fill in the director's and examiner's signatures, as well as examination results, on one of the permits. As defendant filled out the permit, he told Detective Mays to place the official signatures as he had, and to fill in the identifying information for the eventual purchasers.

Defendant was later arrested and charged with five counts of forgery, a second degree felony, for transferring a writing which purported to be a government issued license. Defendant was also charged with being a habitual criminal.

At the preliminary hearing, defendant moved to quash the bindover order and dismiss all charges on the ground that the driver permits were facially incomplete and thus incapable of facilitating a fraud within the meaning of the forgery statute. Defendant also argued that he should have been charged under the motor vehicle code for prohibited use of a license, rather than forgery. Prior to trial, defendant again moved to dismiss the information on the same grounds. At trial, defendant requested the court to instruct the jury on the alleged lesser included offenses of attempted forgery and prohibited use of a license. The trial court refused to give the requested instructions, and defendant was convicted on all counts.

Defendant appeals, arguing that (1) there was insufficient evidence to convict him of forgery under Utah Code Ann. § 76–6–501 (1990), and (2) the trial court erred in refusing to instruct the jury on the lesser offenses of attempted forgery, prohibited use of license, and theft by receiving stolen property.[1]

## STATUTORY CONSTRUCTION

■ Defendant argues that, because the bogus driver permits were incomplete, they were not writings within the meaning of Utah Code Ann. § 76–6–501(2) (1990). Therefore, the evidence was legally insufficient to establish that he transferred forged writings under the forgery statute.

The forgery statute specifies that a person is guilty of forgery if the person, with intent to defraud, transfers a writing purported to be the act of another. Utah Code Ann. § 76–6–501 (1990). A writing can include "printing or any other method of recording information, checks, tokens, stamps, seals, credit cards, badges, trademarks, money, and any other symbols of value, right, privilege, or identification." Utah Code Ann. § 76–6–501(2) (1990).

Before we consider the sufficiency of the evidence upon which defendant was convicted, we consider defendant's argument that section 76–6–501 incorporates elements of legal efficacy and completeness.

---

1. Defendant also argues that the trial court erred in refusing to give his instructions because he is entitled to give the jury his theory of the case. This argument is incorporated in defendant's lesser included offenses argument because every defendant who requests an instruction for a lesser-included offense is essentially requesting an instruction reflecting his or her theory of the case.

"We review for correctness a trial court's statutory interpretation, according it no particular deference." *State v. Jaimez,* 817 P.2d 822, 827 (Utah App.1991); *State v. Swapp,* 808 P.2d 115, 120 (Utah App.1991) (citations omitted).

In construing a legislative enactment, this court's primary responsibility is "to give effect to the intent of the legislature." *State v. Jones,* 735 P.2d 399, 402 (Utah App.1987). Where statutory language is clear and unambiguous, we will not look further to divine legislative intent, but will construe the statute according to its plain language. *Id.; Jaimez,* at 827.

Despite defendant's efforts to add additional elements to the statute, we find section 76–6–501(2) to be clear and unambiguous. Nothing in that section, or any other section of the forgery statute, suggests that the legislature intended that an instrument be legally effective or complete in order to constitute a writing. In view of the plain language of Utah Code Ann. § 76–6–501, we conclude that defendant's interpretation is untenable.

SUFFICIENCY OF THE EVIDENCE

We now consider defendant's argument that the State failed to present evidence sufficient to convict him of the crime of forgery.

Our standard in reviewing a challenge to the sufficiency of the evidence when a defendant has been convicted in a jury trial is well-established:

> [T]he evidence and the reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the jury verdict. A jury conviction is reversed for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Johnson,* 774 P.2d 1141, 1147 (Utah 1989) (citations omitted).

In this case, defendant asserts that the State failed to present evidence sufficient to prove that he transferred symbols of value, right, privilege, or identification, that is, writings within the meaning of the statute. However, viewing the evidence in a light most favorable to the jury's verdict, we find that sufficient evidence was presented to establish the elements of forgery.

In this case, the evidence was neither inconclusive nor improbable. Defendant did not contest having sold the temporary driver permits to Detectives Wright and Mays. Nor did he offer any evidence controverting any of the State's evidence. At trial, the two detectives described three separate occasions on which they purchased such permits from defendant. Both detectives testified that the permits were identical to Utah Driver License Temporary Counter Permits, except that identifying information and, on some permits, the director's and examiner's signatures remained to be inserted. Detective Wright testified that defendant instructed her on how to fill in the identifying information so she could use the permit herself. Detective Mays testified that defendant instructed him on how to fill out the director's and examiner's signatures and examination results so that Detective Mays could resell the permits to others for identification purposes. Moreover, Detective Mays testified of defendant's boast that he had sold many such permits to people who regularly used them for identification, and he testified that defendant even bragged that he had successfully used one himself during a traffic stop. Finally, the permits which defendant sold to Detectives Wright and Mays were admitted into evidence and the jury was given an opportunity to inspect them.

The jury could reasonably have inferred that the permits purported to be government issued documents symbolizing identification and the privilege of operating motor vehicles on public highways. The jury could also reasonably have inferred that defendant transferred the permits fully contemplating their eventual fraudulent use of them. We therefore conclude that

the evidence was sufficient to convict defendant of forgery.

## INSTRUCTIONS ON LESSER INCLUDED OFFENSES

■ Finally, we consider defendant's claim that the trial court erred in refusing to instruct the jury on lesser included offenses. Defendant argues that the trial court erred in refusing his requests to instruct the jury on the offenses of attempted forgery and prohibited use of a license.[2] He also argues that by this refusal, the court prevented him from presenting his theory of the case to the jury.

■ An appeal challenging the trial court's refusal to give requested jury instructions presents questions of law. *State v. Perdue,* 813 P.2d 1201, 1203 (Utah App.1991). Therefore, we review the trial court's determinations for correctness and accord them no particular deference. *Id.; State v. Jaimez,* 817 P.2d 822, 827 (Utah App.1991).

■ When a defendant requests that the jury be instructed on lesser included offenses, we apply a two-tier "evidence-based standard" to determine whether the requested instructions should be given. *State v. Baker,* 671 P.2d 152, 159 (Utah 1983). Under that standard, two conditions must be satisfied before a trial court is required to give the requested instructions: (1) the statutory elements of the offense charged must overlap with those of the included offenses; and (2) the evidence adduced at trial must provide a rational basis for a verdict acquitting defendant of the offense charged and convicting him or her of the included offense. *Id.* at 158–59. The first prong of the *Baker* analysis is essentially a side-by-side comparison of the statutorily defined elements of the crimes.

The second prong of the *Baker* analysis requires the court, without judging the credibility of the evidence presented, to determine "whether there is a sufficient quantum of evidence presented to justify sending the question to the jury." *Id.* at 159. If the evidence presented would enable a jury to acquit on the crime charged, and to convict on the lesser offense, the question should be submitted to the jury, and the instruction should be given. *Id.* This prong is designed to preserve the jury's privilege of assessing the credibility of evidence and yet protect that weighing process from "red herrings." *Id.*

■ We first consider whether *Baker* required the trial court to instruct the jury on the offense of attempted forgery, a third degree felony under Utah Code Ann. §§ 76–6–501 and 76–4–102. The first prong of the test is satisfied because the elements of forgery and attempted forgery necessarily overlap. With respect to the second prong, the question is whether the jury could have acquitted defendant of forgery and convicted him of attempted forgery under the facts proved at trial. *Id.* at 159. Defendant argues that, because he left blank spaces in the permits, the jury may have believed that he "did not fully satisfy the act of forgery."

Defendant's argument misapprehends the nature of his convictions. As the record discloses, he was not charged with forgery for creating forged driver permits. Defendant was charged and convicted for *transferring* the bogus permits. The only acts defendant was required to complete were the *transfers* of the permits. In this case, the bogus permits entered the undercover officers' hands as they left defendant's hands, and the transfers were then and there complete. Defendant presented no evidence at trial to dispute that these transfers occurred. Under the evidence presented, the jury had no rational basis to find that defendant did not actually transfer the permits. Therefore, the jury had no rational basis to acquit defendant of forgery and to convict him of attempted forgery.

---

**2.** Defendant also argues that the trial court erred in refusing to instruct the jury on the offense of theft by receiving stolen property, a third degree felony under Utah Code Ann. § 76– 6–408. Because defendant raises this argument for the first time on appeal, we do not consider it. *State v. Valdez,* 19 Utah 2d 426, 432 P.2d 53, 54 (1967).

Defendant also argues that the trial court should have instructed the jury on attempted forgery because "the jury still may have considered the blank spaces significant enough to acquit [defendant] of forgery had the lesser included offense of attempted forgery been available." This argument suggests that the trial court should have given the jury the opportunity to misapply the law. The argument ignores the important principle of consistency in the application of the law, and subverts the second prong of the *Baker* test. We conclude that the trial court did not err in refusing to instruct the jury on the offense of attempted forgery.

 Defendant also argues that the trial court was required to instruct the jury on the offense of prohibited use of a license, a class B misdemeanor under Utah Code Ann. § 41–2–133. Under *Baker*, the trial court was required to give the instruction only if there was a rational basis for the jury to acquit defendant of forgery and to convict him of prohibited use of a license. *Baker*, 671 P.2d at 159. The prohibited use of a license statute proscribes the display or possession of a license that is known to be fictitious, canceled, denied, revoked, suspended, disqualified, or altered. Utah Code Ann. § 41–2–133 (Supp.1991).

In this case, the State presented uncontroverted evidence that defendant sold bogus driver permits to undercover detectives. Naturally, incident to his sale and transfer of the permits, defendant possessed and displayed them to the detectives. However, defendant presented no evidence to challenge the fact that he transferred the permits to the detectives, and no other explanation for the fact that he possessed and displayed those permits. Under the evidence presented at trial, the jury rationally could not have acquitted defendant of forgery and still convicted him of prohibited use of a license. In fact, in the context of this case, rather than a lesser included offense, prohibited use of a license could have constituted an additional offense.

Finally, although a defendant is "entitled to have the jury instructed on the law applicable to its theory of the case if there is any reasonable basis in the evidence to justify it," *State v. Torres*, 619 P.2d 694, 695 (Utah 1980); *State v. Aly*, 782 P.2d 549, 550 (Utah App.1989), such instruction must still measure up to the requirements of *Baker*, which it did not do. Therefore, we conclude that the trial court did not err in refusing to instruct the jury on additional offenses.

Affirmed.

JACKSON and ORME, JJ., concur.