**STATE of Utah, Plaintiff and Appellee,**

v.

**Allison Bravenec PETERSON,
Defendant and Appellant.**

**No. 920764–CA.**

Court of Appeals of Utah.

Sept. 15, 1994.

Earl S. Spafford and Clark A. Harms, Salt Lake City, for appellant.

Jan Graham and Kenneth A. Bronston, Salt Lake City, for appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Allison Bravenec Peterson appeals her conviction of aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203 (1990). Defendant claims the trial court erred both during trial and at sentencing. We affirm.

## BACKGROUND

· In the early morning of April 15, 1992, Jeramia Jasson Dorman (J.J.) was shot to death by Leon Peterson, defendant's estranged husband, as J.J., wielding a baseball bat, entered Mr. Peterson's home. Prior to defendant's trial, she had been employed at one of the local Red Lobster Restaurants as the dining room manager. Through her employment, defendant hired and became friendly with Kandi Mlynar and Shane Soper. In February 1992, defendant began discussing her marital difficulties with Ms. Mlynar, including her dissatisfaction with the then-existing custody arrangement for the couple's daughter. A few weeks after defendant initiated these discussions, she told Ms. Mlynar that she would like to have her husband severely beaten up or killed. Defendant apparently expressed the same desire to Mr. Soper and also to Lea Stowell and Hilary Mills, two other Red Lobster employees. Defendant informed Ms. Mlynar and Mr. Soper that if they could find someone to beat or kill her husband, that person could have whatever possessions were in her husband's house. Ms. Mlynar approached J.J. and his friends "Jason" and "John", all teenagers, in March 1992. Ms. Mlynar described defendant's marital problems and told them that if they beat up Mr. Peterson they could take anything they wanted out of the house. The three boys agreed to beat up Mr. Peterson and Ms. Mlynar subsequently informed defendant of the boys' agreement. Defendant thereafter provided a photograph of her husband to the three boys and drew at least one map of Mr. Peterson's home, indicating the location of his television, stereo, antique gun collection, and 9mm pistol.

On the night selected to carry out the plot, defendant, Ms. Mlynar, and Mr. Soper met the three young men and drove to Mr. Peterson's home at approximately 12:10 a.m. J.J. was armed with an aluminum baseball bat. After pointing out Mr. Peterson's home and giving last minute instructions, defendant and Ms. Mlynar left to wait at a convenience store for the return of Mr. Soper and the three young men. The group of men approached Mr. Peterson's home. They rang the doorbell at least twice and then softly knocked on the door. Mr. Peterson, awakened by the doorbell, became suspicious when the outside motion sensor lights failed to turn on. He thus armed himself with a pistol and proceeded downstairs to the front door. Mr. Peterson opened the door approximately six inches to see who was outside. J.J. immediately kicked open the door, throwing Mr. Peterson back into the home with sufficient force to make a dent in the plaster wall.[1] J.J. entered Mr. Peterson's home and swung at him with a baseball bat. Mr. Peterson shot J.J. five times with the pistol, killing him. J.J. fell backwards and came to rest on the doorway and front porch. The other boys and Mr. Soper subsequently fled the scene, drove to the convenience store where Ms. Mlynar and defendant were waiting, and informed them that J.J. had been shot. On these facts, the jury convicted defendant of aggravated burglary. The trial court subsequently sentenced her to the Utah State Prison for a term of five years to life.

## ISSUES

On appeal, defendant asserts the trial court erred by: (1) improperly considering and relying on extrajudicial information at sentencing without first providing defendant with this information; (2) failing to submit to the jury all of defendant's requested lesser included offenses, and also confusing the jury on the one submitted lesser included offense instruction of conspiracy; (3) improp-

---

1. At this point, defendant alleges facts different from the trial court's findings. Primarily, she argues that J.J. did not enter Mr. Peterson's home, thereby failing to meet the element of "entry" required for burglary.

erly excluding evidence at trial as hearsay; and (4) making statements and engaging in conduct from the bench that were prejudicial to defendant.[2]

## ANALYSIS

### Trial Court's Consideration of Mr. Peterson's Letter and Victim Impact Statement

Defendant argues on appeal that the trial court, in determining her sentence, improperly relied on extrajudicial comments made by Mr. Peterson in a letter to the judge and in the Victim Impact Statement. Defendant asserts that the trial court's reference during sentencing to Mr. Peterson's comments in his letter was unfair to her because she did not have an opportunity to review and prepare a rebuttal to these "extrajudicial" statements.

■ Defendant did not object to the references as required by Rule 103(a) of the Utah Rules of Evidence. Had defendant objected, it is quite possible the trial court would have allowed her an to opportunity to rebut the statements of Mr. Peterson. *See West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1313–14 n. 2 (Utah App.1991) (may not fail to object hoping for a favorable result and then rely on appeal if unsuccessful). As a result, defendant may not raise the issue for the first time on appeal, absent plain error. *See State v. Elm,* 808 P.2d 1097, 1099–1100 (Utah 1991) (failure to object to lack of access to presentence report preclud-

ed review on appeal). Defendant did not file a reply brief asserting plain error. *See State v. Sepulveda,* 842 P.2d 913, 918 (Utah App. 1992) (court would not consider issue for first time on appeal when defendant did not argue plain error). Accordingly, we do not consider whether the trial court erred in failing to disclose information upon which the trial court relied in sentencing her.

### Lesser Included Offense Instructions

#### 1. *Failure to Give Requested Instructions to Jury*

Defendant submitted jury instructions to the trial court for the following lesser included offenses: attempted aggravated burglary, burglary, attempted burglary, criminal trespass, and attempted criminal trespass. The trial court refused to submit these lesser included offense instructions to the jury, based on its belief that there was no credible testimony contradicting the fact that J.J. entered Mr. Peterson's residence.[3]

■ Before addressing this argument, we note that the trial court's refusal to give a requested jury instruction presents a question of law that we review nondeferentially for correctness. *State v. Mincy,* 838 P.2d 648, 658 (Utah App.) *cert. denied,* 843 P.2d 1042 (Utah 1992); *accord State v. James,* 819 P.2d 781, 798 (Utah 1991).

> The Witness: Not beyond a reasonable doubt can I honestly say that is exactly what they were talking about.
> Judge Young: So you don't know what they were really talking about?
> The Witness: No, I don't.

2. Defendant's fourth argument regarding the trial court's prejudicial conduct and statements has no merit and we decline to address it. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989). As for defendant's third argument regarding the trial court's exclusion of evidence, we note only that the trial court is given fairly broad discretion to exclude evidence which it deems irrelevant or unreliable, pursuant to the rules of evidence. Our review of the record shows no abuse of that discretion by the trial court in excluding the testimony of two witnesses who could neither establish an adequate foundation for their testimony nor verify its relevancy and reliability, as evidenced by this exchange between the trial court and one of the witnesses, Ms. Scharrier:

> Judge Young: Let me ask this witness. Do you know what they were talking about or do you believe that you concluded that after ·the incident occurred?

3. If entry occurred, the attempt offenses would logically be excluded. Defendant argues only the issue of entry in connection with the excluded instructions. Presumably, defendant concedes that burglary and criminal trespass were not appropriate lesser included offenses because of the undisputed evidence that J.J. brandished an aluminum bat. *See* Utah Code Ann. § 76–6–203(1) (1990) (aggravated burglary is burglary where participant in crime (a) causes bodily injury to a nonparticipant, (b) uses or threatens use of a dangerous weapon, or (c) possesses or attempts to use an explosive or dangerous weapon; *see also id.* § 76–6–202 (defining burglary) and *id.* § 76–6–206 (defining criminal trespass).

To resolve this issue, we rely on section 76–1–402(4) of the Utah Code and *State v. Baker*, 671 P.2d 152 (Utah 1983). Section 76–1–402(4) states:

> The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

Utah Code Ann. § 76–1–402(4) (1993). The *Baker* court discussed section 76–1–402(4) in the context of a burglary case, and stated that the rational basis standard of section 76–1–402(4)

> does not require the court to weigh the credibility of the evidence, a function reserved for the trier of fact. The court must only decide whether there is a *sufficient quantum of evidence* presented to justify sending the question to the jury, a decision which must be made concerning all jury instructions in any trial.

*Baker*, 671 P.2d at 159 (emphasis added).

In the present case, the trial court made the following comment at trial regarding the element of "entry":

> [T]he entry, as you well know, under the law, requires just simple passage over the barrier of the house which means, potentially, inches across the threshold, if that. And there is no witness that has testified that there was no entry. Every witness has testified there was entry. And it is absolutely inconsistent with the fact situation as to what happened, where the victim was found, and so on, of the shooting, for the Court to conclude anything other than that there was entry by the foot, by the pressure against the door, and by the testimony of the other witnesses. So I find no credible testimony. I think reasonable minds could absolutely not differ on the basis of the issue that [defendant] raise[s]

as to whether there was a question of entry. On that basis I denied those jury instructions.

The trial court thus declined defendant's request for the lesser included offense instructions[4] based on its belief that there was an insufficient quantum of evidence. Appellant argues on appeal, however, that the police report, the location of J.J.'s body, the testimony of one expert who testified as to where one should expect to find blood if J.J. was shot in the house, and the testimony of one of the boys during police questioning, combine to raise enough doubt as to the element of "entry" that the trial court should have submitted the lesser included offense instructions to the jury.

We agree with the trial court that there was an insufficient quantum of evidence opposing the element of "entry" to submit the lesser included offenses to the jury. There is no testimony controverting the fact that J.J. kicked open the door when Mr. Peterson initially opened it. A simple passage by any part of the body over the door's threshold can amount to entry, J.J.'s uncontroverted "kick" to open the door is sufficient to establish entry.[5] *See* Utah Code Ann. § 76–6–201(4) (1990) (defining entry as "[i]ntrusion of any part of the body" or "[i]ntrusion of any physical object under control of the actor"); *State v. Isaacson*, 704 P.2d 555, 558 (Utah 1985) (upholding burglary conviction where only head, hands, and arms of convicted burglar intruded through open window). Consequently, the trial court did not err by refusing to submit to the jury the lesser included offense instructions on attempted aggravated burglary, burglary, attempted burglary, criminal trespass, and attempted criminal trespass. In accordance with the standard established by section 76–1–402(4) and *Baker*, there was an insufficient quantum of credible evidence controverting

---

4. As discussed later in this opinion, the trial court submitted a lesser included offense instruction to the jury on criminal conspiracy.

5. There is additional testimony that J.J. took several steps inside the home and swung a baseball bat at Mr. Peterson. Furthermore, the individual whose testimony to police before trial raised a question of entry apparently changed his testimo-

ny at trial to conform with the other participants' testimony that J.J. did in fact enter the home. We need not consider this additional testimony, however, or defendant's recital of other testimony allegedly controverting the element of "entry," as it is uncontroverted that J.J. kicked open the door, thereby "entering" Mr. Peterson's home.

the fact that J.J. entered Mr. Peterson's home.

### 2. Lesser Included Offense Instruction on Conspiracy

The trial court submitted to the jury a lesser included offense instruction of conspiracy to commit aggravated burglary. During deliberation, the jury sent a written note to the trial court asking, "What is difference between being a 'party' to the crime (she didn't enter property) and being a conspirator?" The trial court's written response to the jury was, "There is no difference." Defendant asserts that the trial court's response was incorrect, thereby effectively nullifying the lesser included offense instruction for conspiracy.

■ The trial court is obligated by statute to submit to the jury a lesser included offense instruction only when "there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Utah Code Ann. § 76–1–402(4) (1990); see also State v. Crick, 675 P.2d 527, 531 (Utah 1983) ("In short, as we recognized in Baker, our Criminal Code added the requirement that the evidence must provide a rational basis for both acquitting of the charged offense and convicting of the lesser included offense").

■ Although conspiracy is a valid lesser included offense,[6] we believe in this case there was no rational basis on which the jury could have acquitted defendant of aggravated burglary and convicted her of conspiracy. It is axiomatic that "[w]here several combine together to commit an unlawful act, each is responsible for the acts of his associates or confederates committed in furtherance thereof or in the prosecution of the common design for which they combined." State v. Kukis, 65 Utah 362, 237 P. 476, 481 (1925); accord Johnson v. State, 725 P.2d 1270, 1273 (Okla.Crim.App.1986). Furthermore, a conspirator who desires to avoid further liability by withdrawing from the conspiracy must take some affirmative action to withdraw from, or thwart, the conspiracy. Charles E. Torcia, Wharton's Criminal Law § 734, at 555–57 (14th ed. 1981); see also Johnson, 725 P.2d at 1273. In addition, defendant, rather than the State, generally has the burden of showing proper withdrawal from a conspiracy. See Johnson, 725 P.2d at 1273.

■ The trial court should have instructed the jury on the lesser included offense of conspiracy only if there was a rational basis for acquitting defendant of the charged offense and convicting her on the lesser included offense. Such a conviction would have to have been based on evidence that (1) defendant tried to withdraw from or otherwise thwart the conspiracy, (2) the designed criminal activity of the conspiracy was unfulfilled, or (3) the act committed by defendant's co-conspirators was not in furtherance of the conspiracy. In defendant's case, she presented no evidence that she took any affirmative action to withdraw from or thwart the conspiracy. Her defense appears to have been that Ms. Mlynar instigated the plot, while defendant did not really participate or realize what was going on. Furthermore, defendant does not dispute the fact that the conspiracy's planned-for criminal activity occurred. Finally, she presented no evidence that the aggravated burglary was not done in furtherance of the conspiracy. Accordingly, because, as the jury found, defendant remained part of the conspiracy throughout the criminal episode, she is as responsible for the aggravated burglary as her co-conspirators, Mr. Soper and the three teenage boys, who performed the act.

■ Given the lack of any evidence or assertion by defendant that she abandoned the conspiracy prior to the time it fulfilled its objective, there is no logical, rational basis on which the jury could have convicted defendant of conspiracy and acquitted her of ag-

---

**6.** Conspiracy to commit the underlying offense is a proper lesser included offense. See Utah Code Ann. § 76–1–402(3) (1990) ("A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when: ... (b) It constitutes an attempt, solicitation, *conspiracy*, or form of preparation to commit the offense charged or an offense otherwise included therein") (emphasis added).

gravated burglary. If she were guilty of conspiracy, she had to also be guilty of aggravated burglary as a matter of law. Consequently, the trial court should not have submitted the lesser included offense of conspiracy to the jury. As a result, the trial court's response to the jury's question, whether erroneous or not,[7] is irrelevant and any error was harmless. Accordingly, we decline to reverse defendant's conviction based on her allegations of the trial court's prejudicial error.

## CONCLUSION

The trial court properly excluded hearsay evidence at trial for lack of proper foundation and reliability. We do not reach the issue of whether the trial court committed reversible error by failing to disclose Mr. Peterson's letter to defendant before sentencing because defendant made no objection to the information at trial. Additionally, the trial court

correctly refused to give defendant's requested lesser included offense instructions as there was an insufficient quantum of evidence controverting the element of entry in Mr. Peterson's residence. Furthermore, the trial court's written answer to the jury during deliberation regarding the difference between a "party" and a "conspirator" was harmless error, if erroneous at all, because there was no rational basis for submitting the lesser included offense instruction on conspiracy. Accordingly, we affirm defendant's conviction.

BENCH and BILLINGS, JJ., concur.

---

7. We are not convinced that the trial court's response to the jury's question was error. Its response was correct in at least one sense. That is, an individual who helps plan a crime, i.e., a conspirator, but who does not actively participate in the execution of the crime can be charged as a party to the crime under § 76-2-202, the accomplice liability statute. Thus, whether an individual is characterized as an "accomplice" or a "conspirator," that individual may be properly called, and prosecuted as, a "party" to the crime.