**STATE of Utah, Plaintiff and Appellee,**

v.

**Curtis Gaylen Green SIMPSON, Defendant and Appellant.**

**No. 940471–CA.**

Court of Appeals of Utah.

Oct. 5, 1995.

Donald E. McCandless, Fisher, Scribner, Moody & Stirland, P.C., Provo, for Appellant.

James H. Beadles, Asst. Atty. Gen., and Jan Graham, State Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, JACKSON and WILKINS, JJ.

WILKINS, Judge:

Curtis Gaylen Green Simpson appeals his conviction of eluding a peace officer, a third-degree felony, in violation of section 41–6–13.5 of the Utah Code.[1] We affirm the conviction.

[1]. We declined to receive oral arguments on this matter, having determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Utah R.App.P. 29(a)(3).

## BACKGROUND

On the evening of March 8, 1994, a brown Mercury Cougar with Oregon license plates pulled into the Hillside Farms gas station in Scipio, Utah. After someone filled ten dollars' worth of gasoline into the Mercury, the vehicle sped away toward Interstate 15 without anyone paying for the gasoline.

Another driver at the gas station followed the Mercury long enough to determine the license plate number, a description of the vehicle, and the vehicle's apparent route of travel. This information was then relayed to the Millard County Sheriff's Office.

Deputy Sheriff Scott Correy heard the radio dispatch and positioned his vehicle along Interstate 15 at mile marker 216, where he could observe southbound traffic coming from Scipio. Soon after, a vehicle matching the description and license plate number passed Deputy Correy. Deputy Correy followed the Mercury for about four miles.

After another local officer arrived to assist Deputy Correy, both officers turned on their police vehicles' red and blue lights. The Mercury immediately accelerated from about sixty to about eighty-five miles per hour. At that point, both police vehicles sped up in pursuit, with all remaining emergency lights and sirens turned on.

While in pursuit, Deputy Correy turned on a spotlight, illuminating the interior of the speeding vehicle. From this vantage point, Deputy Correy observed the Mercury's driver pull down the rear-view mirror and also observed a passenger throw an unidentified object out the window.

The pursuit continued at a speed of about eighty-five miles per hour, with the Mercury weaving somewhat between the two lanes. Finally, the Mercury slowed and pulled to a stop, approximately eleven miles from the point where Deputy Correy and the other officer first turned on their flashing lights. The two officers then arrested Simpson—the vehicle's driver—and his two passengers.

The State ultimately charged Simpson with eluding a peace officer, a third-degree felony,

in violation of section 41–6–13.5 of the Utah Code, and with retail theft, a class B misdemeanor, in violation of section 76–6–412(1)(d) of the Utah Code.

At trial, Simpson's attorney requested that an instruction be given to the jury on the offense of disobeying a peace officer, as a lesser included offense of eluding a peace officer. Disobeying a peace officer is an infraction, pursuant to section 41–6–13 of the Utah Code.[2] The trial judge declined to give the proposed instruction, and the jury subsequently found Simpson guilty of eluding a police officer and retail theft. Simpson appeals his conviction of eluding a peace officer.

## ANALYSIS

■ The sole issue for our review is whether the trial court erred in refusing to instruct the jury on the offense of disobeying a peace officer. The refusal to give a requested jury instruction on a claimed lesser included offense is a legal determination, which we review for correctness. *State v. Peterson,* 881 P.2d 965, 968 (Utah App.1994), *cert. denied,* 890 P.2d 1034 (Utah 1995); *State v. Singh,* 819 P.2d 356, 360 (Utah App. 1991), *cert. denied,* 832 P.2d 476 (Utah 1992).

■ The trial court must engage in a two-part legal analysis to determine whether or not to give the jury a requested lesser included offense instruction. *See State v. Baker,* 671 P.2d 152, 157–60 (Utah 1983). First, the trial court must compare the statutorily defined elements of the crimes to determine whether the crime for which an instruction has been requested is indeed a lesser included offense of the crime charged. *See id.* at 158–59; *State v. Jones,* 878 P.2d 1175, 1177 (Utah App.1994); *Singh,* 819 P.2d at 360. Second, the trial court must instruct the jury on the lesser included offense if, in light of the evidence presented, "there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Utah Code Ann. § 76–1–402(4) (1990); *see also Baker,* 671 P.2d at

159; *Jones,* 878 P.2d at 1177; *Singh,* 819 P.2d at 360.

*State v. Baker* and subsequent case law requires the trial court to engage in this legal analysis whenever a defendant requests a jury instruction on a lesser included offense. *See Baker,* 671 P.2d at 158–59. Furthermore, the trial court is obligated, by statute as well as case law, to give the instruction if the two conditions are satisfied; the trial court has no discretion in the matter. *See id.* at 159; Utah Code Ann. § 76–1–402(4) (1990).

Unfortunately, the trial court in this case did not engage in the legal analysis as required under *Baker.* At the conclusion of the trial, with the jury out of the courtroom, the trial court stated its rationale for refusing to instruct the jury on the offense of disobeying a peace officer:

> The reason I did not include [the jury instruction], for the record, is that the state does have the burden of proving each element that has been charged beyond a reasonable doubt. If the state fails to prove, in effect, the last element of the eluding or fleeing charge, then my instructions tell the jury they are to find the defendant not guilty. I think it is not any loss, and not even in his best interest to have a lesser included offense of which they might find him guilty. If he is guilty of the offense as charged, then the lesser included again is of no significance. Its absence, I think, is probably in his best interests.

■ Although the trial court undoubtedly had the best of intentions, it is not within the purview of the trial court to second-guess defense counsel's strategy in requesting a lesser included offense instruction. The trial court improperly exercised its discretion in making the *legal* determination of whether the requested instruction should be given to the jury. As the *Baker* court indicated:

> [I]t is no answer to [a] demand for a jury instruction on a lesser offense to ar-

---

2. Section 41–6–12 of the Utah Code establishes that "[a] violation of any provision of . . . chapter [6] is a class C misdemeanor, unless otherwise provided," except that "[a] violation of any provision of Articles 2, 11, 15, and 17 of this chapter is an infraction, unless otherwise provided." Utah Code Ann. § 41–6–12 (1993). Section 41–6–13 is a provision of Article 2 of chapter 6 with no specified penalty. Accordingly, a violation of § 41–6–13 is an infraction.

gue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction ... precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory.

*Baker,* 671 P.2d at 156–57 (quoting *Keeble v. United States,* 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973)). " 'To expect a jury ... to find a defendant innocent and thereby set him free when the evidence establishes beyond doubt that he is guilty of *some* ... crime requires of our juries clinical detachment from the reality of human experience.' " *Id.* at 157 (quoting *Beck v. Alabama,* 447 U.S. 625, 642, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980)) (emphasis added). For this and other compelling reasons, the law of this state specifically establishes the legal analysis to follow regarding lesser included offenses and grants no discretion to trial courts to choose an alternative analysis nor discretion to refuse to give the proper jury instruction when the legal requirements have been met.

■ Nevertheless, even though the trial court erred by not applying the proper legal test in making its determination, we will *engage in the required analysis and determine whether Simpson is entitled, as a matter of law, to a jury instruction on a lesser included offense of disobeying a peace officer.*

We first compare the statutorily defined elements of the two crimes. Section 76–1–402(3)(a) provides the relevant definition of an "included" offense. According to this section, an offense is included in the charged offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Utah Code Ann. § 76–1–402(3)(a) (1990). In other words, "[i]f the same facts tend to prove elements of more than one statutory offense, then the offenses are related.... [T]here [must] exist some overlap in the statutory elements of allegedly 'included' offenses...." *Baker,* 671 P.2d at 158–59.

Section 41–6–13.5 establishes the elements of the offense charged in this case, eluding a peace officer:

An operator who, having received a visual or audible signal from a peace officer to bring his vehicle to a stop, operates his vehicle in willful or wanton disregard of the signal so as to interfere with or endanger the operation of any vehicle or person, or who attempts to flee or elude a peace officer by vehicle or other means is guilty of a felony of the third degree.

Utah Code Ann. § 41–6–13.5(1) (1993). To be guilty of this offense, a driver must first willfully or wantonly disregard an officer's visual or audible signal to stop the vehicle. The crime is then completed in one of two ways: Either (1) the driver operates his vehicle in a way that interferes with the operation of any other vehicle or endangers any person or vehicle, *or* (2) the driver attempts to flee or elude the officer. Accordingly, a violation of section 41–6–13.5 could be characterized either as "failing to respond to a peace officer's signal to stop" or as "fleeing or eluding a peace officer."

On the other hand, section 41–6–13 establishes, in the relevant part, that "[a] person may not willfully fail or refuse to comply with any lawful order or direction of any peace officer." Utah Code Ann. § 41–6–13(1) (1993). A violation of this section, the offense of disobeying a peace officer, is an infraction.

An analysis of the statutory elements reveals that if a driver of a vehicle willfully disregards or ignores an officer's signal to stop, not only has the driver completed a substantial portion of the offense described in section 41–6–13.5, but the driver has also completed the offense set forth in section 41–6–13. Through such conduct, the driver has willfully failed or refused to comply with a peace officer's lawful order, that order being an order to stop the vehicle as conveyed to the driver by visual or audible signal. Thus, a comparison of the two offenses reveals that disobeying a peace officer can be a lesser included offense of fleeing or eluding a peace officer.

While the lesser offense of disobeying a peace officer requires "willful" conduct in order to meet the requisite level of culpability under section 41–6–13, the greater offense of fleeing or eluding a peace officer requires "willful *or wanton* disregard" on the part of the driver in order to violate section 41–6–13.5. "Wanton" is not defined for purposes of this statute, but it is commonly thought of as "[r]eckless, heedless, malicious; characterized by extreme recklessness or foolhardiness; recklessly disregardful of ... consequences." Black's Law Dictionary 1582 (6th ed. 1990). Our supreme court addressed the meaning of the phrase "wanton or reckless disregard" as it appeared in a criminal statute. *See State v. Johnson*, 12 Utah 2d 220, 364 P.2d 1019 (1961). According to *Johnson*, the phrase "connotes the generally accepted meaning of 'criminal negligence.'" *Id.* at 221, 364 P.2d at 1019. Under section 76–2–103(4) of the Utah Code, a person is criminally negligent "when he ought to be aware of a substantial and unjustifiable risk that the circumstances [surrounding his conduct] exist or the result [of his conduct] will occur." Utah Code Ann. § 76–2–103(4) (1990).

To the extent that a "wanton" state of mind may be sufficient to convict a person under section 41–6–13.5, but not to convict a person under the lesser offense, the violation of section 41–6–13 would not always be a lesser included offense of a violation of section 41–6–13.5. Nevertheless, our supreme court has recognized that "some crimes have multiple variations, so that a greater-lesser relationship exists between some variations of these crimes, but not between others." *State v. Hill*, 674 P.2d 96, 97 (Utah 1983).

Next, we must determine whether "the evidence adduced at trial ... provide[s] a rational basis for a verdict acquitting defendant of the offense charged and convicting him or her of the included offense." *Singh*, 819 P.2d at 360; *see also* Utah Code Ann. § 76–1–402(4) (1990). If so, then the trial court erred in refusing to instruct the jury on the lesser included offense of disobeying a peace officer.

In making this legal determination, we must examine the evidence presented at trial. This "second prong ... requires the court, without judging the credibility of the evidence presented, to determine 'whether there is a sufficient quantum of evidence presented to justify sending the question to the jury.'" *Singh*, 819 P.2d at 360 (quoting *Baker*, 671 P.2d at 159).

The prosecution provided the testimony of Deputy Correy, who testified that Simpson increased his speed from about sixty to about eighty-five miles per hour as soon as the officers illuminated the red and blue lights of their vehicles. Deputy Correy further testified that Simpson continued to drive at roughly eighty-five miles per hour for nearly eleven miles before stopping, that Simpson's vehicle weaved somewhat between the two lanes during the officers' pursuit, that Simpson pulled down the rear-view mirror during that time, and that someone threw at least one object from the passenger window while the Mercury sped down the interstate.

The defense provided no evidence, nor did it dispute the facts to which Deputy Correy testified. Instead, the defense merely attempted to call into question the interpretation of those events.

To convict Simpson of the lesser offense of disobeying a peace officer, a jury would have to conclude that Simpson willfully refused or failed to comply with the officers' signal to stop his car. Even so, in order to acquit of the charged offense, a jury would have to further conclude that Simpson's conduct did not interfere with any other vehicle or endanger any person or vehicle and that Simpson did not at any time attempt to flee or elude the officers.

In light of the uncontroverted evidence that Simpson responded to the police vehicles' flashing lights by accelerating nearly twenty-five miles per hour to a speed roughly twenty miles per hour over the legal limit and failed to pull over for about eleven miles, we conclude that no rational jury could acquit Simpson of fleeing or eluding a peace officer but still find him guilty of disobeying a peace officer. The jury simply had no rational basis to conclude that, although Simpson *willfully* disregarded the officers' signal to stop his car and immediately increased his speed in response to the officers' signal and

failed to pull over for several miles, he was at no time attempting to flee or elude the officers.

The defense theorized in closing argument that Simpson might have frozen at the wheel when he saw the officers' flashing lights and that he pulled over as soon as he overcame the initial shock. Even were the jury to believe this theory, such a belief would tend to negate the mental elements of *both* offenses since even the lesser offense requires willful conduct. Accordingly, the defense theory would not justify instructing the jury on the offense of disobeying a peace officer.

Furthermore, in its cross-examination of Deputy Correy, the defense elicited testimony to establish that Simpson did not continue to accelerate to faster and faster rates of speed above eighty-five miles per hour and that Simpson never crossed the median to change directions nor did he attempt to escape by taking various exits along the interstate. Simpson claims that such evidence could lead a jury to conclude that he never attempted to flee or elude the officers. Nevertheless, no reasonable jury could conclude that Simpson's failure to obey the signal to stop was willful but that his other conduct did not amount to an attempt to flee or elude. Although Simpson eventually abandoned any designs for escape and did not take more extreme measures along the way, the undisputed evidence could only establish either a conviction on the greater offense of fleeing or eluding an officer or an acquittal on both the greater and lesser offenses.[3]

The quantum of evidence presented in this case does not justify sending the question of a lesser charge, disobeying a peace officer, to the jury.[4] Thus, the trial court did not err in refusing to instruct the jury on the lesser included offense.

## CONCLUSION

Both statutory and case law require a trial court to engage in a two-part legal analysis to determine whether a criminal defendant is entitled to have the jury instructed on an alleged lesser included offense; a trial court has no discretion in the matter. The trial court in this case erred in not applying the proper legal test.

After engaging in the analysis ourselves, we conclude that disobeying a peace officer, in violation of section 41–6–13, can be a lesser included offense of fleeing or eluding a peace officer, in violation of section 41–6–13.5. However, the evidence in this case does not provide the jury with a rational basis for acquitting Simpson of the offense charged but convicting him of the lesser included offense. Accordingly, we affirm the trial court's refusal to instruct the jury on the lesser charge.

BENCH and JACKSON, JJ., concur.

---

**3.** A strong argument could also be made that no rational jury could conclude that Simpson drove for nearly 11 miles in the dark at a speed roughly 20 miles per hour over the legal limit, weaving somewhat between the lanes, with an object thrown out of the car window along the way, and conclude that Simpson did not thus endanger at least his passengers and the pursuing officers—thereby also violating § 41–6–13.5.

**4.** See *State v. Velarde*, 734 P.2d 440, 447–48 (Utah 1986), *Baker*, 671 P.2d at 159–60, *Peterson*, 881 P.2d at 969–71, and *Singh*, 819 P.2d at 360–61, as examples of cases where the appellate court reached a similar conclusion with respect to the evidence.