The STATE of Utah, Plaintiff and Respondent,

v.

Stanley Van OLDROYD, Defendant and Appellant.

No. 19335.

Supreme Court of Utah.

July 25, 1984.

Marcus Taylor, Richfield, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, R. Don Brown, Sevier Co. Atty., Richfield, for plaintiff and respondent.

HALL, Chief Justice.

Stanley Van Oldroyd appeals his conviction of aggravated assault,[1] contending that the trial court erred in refusing to instruct the jury regarding the offense of threatening with a dangerous weapon.[2] Oldroyd argues that threatening with a

---

**1.** In violation of U.C.A., 1953, § 76–5–103.

**2.** In violation of U.C.A., 1953, § 76–10–506.

dangerous weapon is a lesser included offense of aggravated assault and that the court's refusal to instruct was prejudicial error. We reverse.

In February 1983, Oldroyd and his wife were experiencing marital difficulties and were no longer living together. Mrs. Oldroyd was living in a basement apartment in Richfield, Utah. About 8:20 p.m. on February 24, 1983, Oldroyd went to his wife's apartment and asked to be admitted. Mrs. Oldroyd refused and asked him to leave. When Oldroyd would not leave, Mrs. Oldroyd called the police. Officers John Evans, Rex Dana and Virgil Sickels of the Richfield City Police Department responded to the call. Officers Evans and Sickels approached the unlighted stairwell to Mrs. Oldroyd's apartment unannounced and without lights. Evans testified that when he reached the top of the stairwell he heard the sound of a revolver being cocked. Sickels, who was one to two feet behind Evans, did not hear any such sound. Evans turned on his flashlight, pointed it down the stairwell and saw Oldroyd. Evans did not identify himself as a police officer or say anything to Oldroyd. Evans testified that Oldroyd was sitting on the fourth or fifth step of the stairway with his arm extended pointing a gun at Evans. He could not determine whether the hammer was cocked. Evans, however, also testified during cross-examination that Oldroyd had his back to him. In any event, Evans testified that, after seeing Oldroyd, he jumped back from the stairwell and went to his patrol car for a radio and a shotgun. He returned to the stairwell and asked Oldroyd several times to throw out the gun. After a few minutes, Oldroyd did so. The hammer was uncocked and the gun was unloaded when Evans picked it up. Based upon Evans' version of the facts, Oldroyd was arrested and charged with aggravated assault.

At trial, Oldroyd took the stand and testified that he did not point the gun at Evans and that he did not intend to frighten or threaten Evans with it. He said that he had gone to his wife's apartment to talk to her and to give her the gun to protect herself. Since she did not like loaded guns, he had unloaded the revolver and had put the bullets in his pocket, where they were found after his arrest. He had also opened the cylinder so she could see that it was unloaded. Oldroyd testified that he was standing, leaning against the wall of the stairwell with the gun hanging from one of his fingers, presumably by the trigger guard, when the light was shone down the stairwell. Oldroyd said that he did not hear the officers coming, and when the flashlight was shone in his face he neither recognized Officer Evans nor saw the police uniform. Evans did not identify himself or speak to Oldroyd.

At trial, Oldroyd requested the trial judge to instruct the jury on the lesser included offense of threatening with a dangerous weapon. The judge refused, and exception was properly and timely taken to the refusal. Oldroyd was convicted of aggravated assault and appeals that conviction, contending that the trial court erred in refusing to instruct the jury on threatening with a dangerous weapon.

This Court, in *State v. Baker*,[3] set forth the standards to be used by trial and appellate courts in determining when to instruct a jury on lesser included offenses. When the prosecution seeks an instruction on a lesser included offense, "both the legal elements and the actual evidence or inferences needed to demonstrate those elements must *necessarily be included* within the original charged offense."[4] However, when the defendant requests a lesser included offense instruction, the standard is somewhat different. In that situation, there must be some overlapping of the statutory elements of the offenses. If that overlapping exists and the evidence is ambiguous and susceptible to alternative interpretations, the trial court must give a lesser included offense instruction if any one of the alternative interpretations pro-

---

**3.** Utah, 671 P.2d 152 (1983).

**4.** *Id.* at 156.

vides both a "rational basis for a verdict acquitting the defendant of the offense charged *and* convicting him of the included offense." [5]

Therefore, the first step in determining whether a lesser included offense instruction should have been given in this case is to determine whether the statutory elements overlap and whether the evidence required to prove the greater would also prove the lesser.

■ Oldroyd was charged with and convicted of aggravated assault in violation of U.C.A., 1953, § 76–5–103(1)(b). In order to commit that crime, an individual must use a deadly weapon while committing simple assault, the elements of which are set forth in U.C.A., 1953, § 76–5–102(1). Two types of assault are defined in that statute: "(a) an attempt, with unlawful force or violence, to do bodily injury to another; or (b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another." Oldroyd was charged under the provisions of subsection (b). Therefore, in order to prove the charge of aggravated assault the evidence must show that Oldroyd assaulted the officer and that he used a deadly weapon with the intention to do bodily harm.[6]

■ Oldroyd argues that under the facts of this case U.C.A., 1953, § 76–10–506 is a lesser included offense of aggravated assault. That section provides in pertinent part "exhibit[ing] any dangerous weapon in an angry or threatening manner ...." It is apparent that these two statutes have elements in common. Both require a form of threat and both require the use of a weapon. Thus, the statutes do have overlapping elements, and the first segment of the *Baker* test has been met.

The State, however, argues that this Court, in *State v. Verdin*,[7] held that § 76–10–506 is not a lesser included offense of § 76–5–103(1)(b). This contention ignores the standard established in *Baker* for determining whether a lesser offense is included in a charged offense:

[A]n offense is included in a charged offense when "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." The analysis of whether an offense is included for purposes of deciding whether to grant a defendant's request for a jury instruction must therefore begin with the proof of facts at trial. If the same facts tend to prove elements of more than one statutory offense, then the offenses are related under § 76–1–402.[8]

The facts of this case tend to prove the elements of § 76–10–506, as well as those of § 76–5–103(1)(b). Assuming for the purposes of this analysis that the facts were as Officer Evans stated them to be, Oldroyd did point a gun (a dangerous or deadly weapon) at Evans. Use of the gun under the circumstances of this case could either constitute an assault with intention to do bodily harm, or the lesser offense of exhibition of a dangerous weapon in a threatening manner. Therefore, the facts tend to prove the elements of both statutory offenses.

In addition, however, *Verdin* is easily distinguishable from this case. The question before the Court in *Verdin* was a sentencing question. The defendant there had not asked for a lesser included offense instruction. After being convicted of aggravated assault, Verdin argued that he was entitled to be sentenced under § 76–10–506 since the same conduct had been proscribed by the two criminal statutes. The Court affirmed the conviction and sentence for aggravated assault, saying that the evidence in the case established all the elements of the higher crime and that under the facts of that case the distinction in the level of prescribed conduct was clear. In any event, under the second step of the

---

5. U.C.A., 1953, § 76–1–402(4). *See Baker, supra* n. 3, at 159, 160.

6. *Green v. Turner*, 409 F.2d 215 (10th Cir.1969).

7. Utah, 595 P.2d 862 (1979).

8. *Baker, supra*, n. 3, at 158.

*Baker* analysis, determining whether any alternative interpretations of the evidence would provide a rational basis for a verdict (1) acquitting the defendant of the offense charged and (2) convicting him of the included offense, Verdin would not have been entitled to a lesser included offense instruction.

The facts at trial in *Verdin* clearly established all the elements of aggravated assault: Verdin used a deadly weapon (a loaded rifle) in making a threat to do bodily injury to another (declaring his intention to "smoke" the police officer), accompanied by a show of immediate force or violence (working the rifle action to put a shell in the firing chamber and attempting to pull the trigger while aiming the rifle at the police officer). There was no rational basis by which Verdin could have been acquitted of the offense charged, but still convicted of the lesser offense. The evidence was not ambiguous or subject to any alternative interpretation.

In the case at hand, there is a rational basis for acquitting Oldroyd of aggravated assault and convicting him of threatening with a dangerous weapon. Looking at the evidence in the light most favorable to defendant,[9] there was evidence presented that showed that the gun Oldroyd had was not loaded. The officers all testified that the bullets for the gun were in Oldroyd's pocket when he was arrested. Oldroyd himself testified that he had unloaded the gun before approaching his wife's apartment. Therefore, that evidence is subject to the alternative interpretation that the gun was not loaded and was thus not deadly. Further, there was evidence that clearly negated a threat by defendant to do bodily harm: there was no verbal threat, no direct evidence that the gun was cocked, no bullets in the gun. All witnesses testified that the stairwell was dark. Oldroyd testified that he did not hear the officers approaching and did not recognize Officer Evans when the officer suddenly shone the light directly in Oldroyd's face. Oldroyd further testified that he was frightened of being shot himself. Both Oldroyd and Evans testified that Oldroyd, after throwing his gun out, said to "go ahead and shoot me." Given this evidence, the intent to threaten Evans was clearly in dispute. A jury could reasonably conclude that there was no intention to do bodily injury to the officer while still believing that Oldroyd drew or exhibited the revolver in an angry and threatening manner.

■ Certainly, there was credible evidence by which the jury could have found Oldroyd guilty of aggravated assault, but it is not this Court's role to weigh the evidence. That is the responsibility of the trier of fact. If the evidence offered in the case would permit a jury to find a defendant guilty of the lesser offense and not guilty of the greater, due process requires that a lesser included offense instruction must be given.[10]

The State, however, argues that because Oldroyd pleaded not guilty and took the stand to deny that he pointed the gun at the officers at all, only two options were available to the jury: guilty of aggravated assault or not guilty. This argument misunderstands the standard this Court set forth in *Baker*.

■ This is not a case such as *State v. Shabata*,[11] where the defendant's own theory of defense precluded the requested lesser included instruction. While the defendant's right to a lesser included offense instruction is neither absolute nor unqualified,[12] the fact, standing alone, that a defendant pleads not guilty to a charge does not preclude the giving of a lesser included offense instruction. When looking at the

---

9. *See, e.g., State v. Crick,* Utah, 675 P.2d 527 (1983).

10. *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). *See also Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).

11. Utah, 678 P.2d 785 (1984).

12. *Baker, supra* n. 3, at 157.

evidence to determine whether to give a lesser included instruction, if there is rational evidence *looking at the evidence as a whole* that would put an element of the crime in dispute the lesser included offense instruction should be given. As we said in *Baker:* "[W]here proof of an element of the crime is in dispute, the availability of the 'third option'—the choice of conviction of a lesser offense rather than conviction of the greater or acquittal—gives the defendant the benefit of the reasonable doubt standard."[13]

The United States Supreme Court has also recognized this principle. In *Keeble v. United States*,[14] the prosecution made the argument that the defendant was better off without a lesser included instruction, since if it failed to establish beyond a reasonable doubt every element of the offense charged, the jury would be obliged to return a verdict of acquittal. The Court said:

> True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial,

the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.[15]

■ The same rationale holds true in this case. It is undisputed that Oldroyd disclaimed pointing the gun at the officer at any time. Nevertheless, defendant's counsel put the nature of Oldroyd's intent very much in dispute at trial, and it is not the prerogative of this Court or the trial judge, sitting with a jury, to weigh the evidence and determine guilt or innocence. We cannot say that under the facts of this case the availability to the jury of a third option—convicting Oldroyd of threatening with a dangerous weapon—might not have resulted in a different verdict. The judgment is therefore reversed, and the case is remanded to the district court for a new trial.

STEWART, HOWE and DURHAM, JJ., and DEAN E. CONDER, District Judge, concur.

ZIMMERMAN, Justice, does not participate herein.

CONDER, District Judge, sat.

---

13. *Id.*

14. 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

15. *Id.* at 212–13, 93 S.Ct. at 1997–98.