STATE of Utah, Plaintiff and Appellee,

v.

Jason Scott PEARSON, Defendant and Appellant.

No. 950400.

Supreme Court of Utah.

Aug. 12, 1997.

Jan Graham, Atty. Gen., Creighton C. Horton II, Thomas Brunker, Asst. Attys. Gen., Salt Lake City, for plaintiff and appellee.

Kenneth R. Brown, Salt Lake City, for defendant and appellant.

DURHAM, Justice:

Defendant Jason Scott Pearson was convicted by a jury of aggravated murder and sentenced to a term of life imprisonment with the possibility of parole. He appealed, and we affirm the conviction.

In June 1993, Pearson and a companion named George Kennedy stole Kennedy's mother's car and drove west from Delphi, Indiana. When the two ran out of money, they began to steal gas. On June 16, 1993, a store clerk reported a gas theft in Utah to the Utah Highway Patrol. Shortly thereafter, a deputy sheriff spotted the car—described by the clerk—on I–70. He turned on his lights and attempted to pull the car over, but the vehicle, driven by defendant, sped up.

Testimony at trial indicated that Pearson and Kennedy decided to flee from the officer because of "trouble" in Indiana. Kennedy understood this trouble to refer to an incident where Pearson had been involved in a drug sale and had become an informant for the Indiana police rather than face charges. Pearson testified that Kennedy and he fled for multiple reasons, including the drug incident. A high speed chase involving six police officers followed Pearson and Kennedy's flight. During the pursuit, Pearson shot and killed Trooper Dee Lund. Pearson and Kennedy were eventually apprehended by the other officers, and Pearson was charged with aggravated murder.

Pearson made two pretrial motions relevant to this appeal. First, because of extensive publicity and the small size of the Emery County community, he moved to change venue. The court denied the motion but left open the possibility of reconsideration after voir dire. Pearson did not renew the motion. Second, Pearson challenged the constitutionality of section 76–5–203(1)(e) of the Utah Code, which makes a misdemeanor a predicate crime for felony murder. The court denied that motion as well.

Also during the pretrial period, defense counsel experienced difficulties in interviewing Kennedy. A stipulation was reached between counsel and confirmed by the court requiring that Kennedy's counsel be present at all interviews of Kennedy by the defense and that such interviews be recorded. No further complaints regarding this problem appear in the record.

At trial, Pearson preserved several claims of error. He objected to testimony regarding his prior involvement with the Indiana police, including references to a drug sale, on the grounds that it was improper character evidence and unduly prejudicial. The court allowed the testimony because it was connected to statements allegedly made by Pearson during the police pursuit and relevant to motive. Pearson did not request a limiting instruction regarding the testimony.

Pearson sought a mistrial because of comments made by the prosecutor to Kennedy during a pretrial interview, which surfaced during Kennedy's testimony for the prosecution. The prosecutor had warned Kennedy that if Kennedy changed the story he had previously told about the crime, the prosecu-

tor would write to the parole board seeking to influence the period of time Kennedy would actually spend in prison. The mistrial motion was denied.

During Pearson's case, Pearson attempted to introduce evidence consisting of a simulation in which expert attempted to recreate the shooting, which had occurred while Pearson was firing at the pursuing police from a moving vehicle. Pearson's theory went to intent; Pearson claimed that the simulation would show that had he intended to kill any of the pursuing officers, his aim would have been more accurate than the evidence showed it was. Thus, the inaccurate nature of Pearson's shots prove that Pearson lacked the intent to kill the officers. An expert in "aerodynamics, general physics and math, general engineering and mathematics" designed and conducted the simulation. The expert had two people shoot from the passenger-side window of a moving truck at a target mounted on a trailer that was towed by a truck at an approximate speed of 45 miles per hour. The circumstances of the simulation differed in a number of ways from those of the crime: Defendant allegedly shot from the driver's side of his vehicle; his speeds and those of the pursuing officers were variable; the actual shooting took place on another road; and at least one of the simulation shooters, unlike defendant, was a relative novice with guns. The State objected to the evidence as lacking adequate foundation, and the court refused to admit it.

During closing arguments, the prosecutor related a personal experience about shooting rabbits from the back of a moving truck to suggest that Pearson's shots indicated intent to kill rather than recklessness. Pearson moved for a mistrial; the motion was denied. Pearson also requested a jury instruction on the lesser offense of manslaughter, which was refused. The jury convicted him of aggravated murder, a capital felony requiring intent or knowledge.

Pearson has raised numerous issues on appeal, which we treat as follows:

## I. VENUE

This court reviews trial court venue rulings for abuse of discretion. *See, e.g., State v. Lafferty,* 749 P.2d 1239, 1250 (Utah 1988), *habeas granted on other grounds,* 949 F.2d 1546 (10th Cir.1991). In this case, defendant passed the jury panel for cause and never renewed his motion for change of venue based on excessive publicity. Furthermore, there is no evidence in the record of jury bias. The trial court did not abuse its discretion in denying the motion.

## II. CONSTITUTIONALITY OF SECTION 76–5–203(1)(e)

We need not reach the merits of Pearson's claim regarding this statute because he was not convicted under it and therefore lacks standing to challenge its constitutionality. Pearson was convicted of aggravated murder, not felony murder, and so suffered no harm from the statute's alleged defects. Furthermore, the legislature has subsequently amended the section in a fashion that remedies defendant's complaint, thus diminishing the public importance of the question. Therefore, we decline to treat the constitutionality of former section 76–5–203(1)(e).

## III. MANSLAUGHTER INSTRUCTION

We review a trial court's refusal to give a jury instruction for correctness. *See State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992). The statute requires that a rational basis exist "for a verdict acquitting the defendant of the offense charged and convicting him of the included offense" and defines an included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." Utah Code Ann. § 76–1–402(3)(a), (4). Pearson argues that there was a rational basis for a finding that the killing was reckless, not intentional, and therefore an instruction on manslaughter was warranted. The State points out, however, that the reckless killing of a police officer is included in the definition of murder contained in section 76–5–203(1)(e). Pearson admitted killing the officer and thus, the State argues, no rational

basis existed to instruct the jury on manslaughter.

We need not resolve the question of whether the trial court erred in refusing to give a manslaughter instruction, however, because of the nature of the jury verdict. Here, only Pearson's mental state was disputed at trial. The jury had the opportunity to convict Pearson of either aggravated murder, which requires knowing or intentional killing, or simple murder, which in the case of killing a peace officer requires only recklessness. Because the jury chose to convict for aggravated murder, the court's refusal to give an instruction on manslaughter, an offense requiring recklessness, constituted at most harmless error. *See State v. Gotschall,* 782 P.2d 459, 464 (Utah 1989) (holding that where jury had opportunity to convict defendant of manslaughter but convicted of greater offense of second degree murder, refusing to give instruction on negligent homicide was, if error, harmless). *But see State v. Oldroyd,* 685 P.2d 551, 555–56 (Utah 1984) (reversing conviction for assault with intent to commit serious bodily injury where defendant's request for instruction on lesser included offense of simple assault was refused and jury was thus forced to choose between conviction and acquittal). Here, the jury evidently was convinced beyond a reasonable doubt that the killing was intentional instead of reckless. Therefore, the inclusion of a manslaughter instruction would have served no purpose.

## IV. EVIDENCE OF PRIOR CRIME

 Pearson argues that the admission of testimony about his criminal activities in Indiana showed only bad character, had no probative value with respect to the crime charged, and created undue prejudice with the jury. This court reviews evidentiary rulings on prior crime testimony with limited deference, reviewing closely the trial court's exercise of its discretion. *See State v. Doporto,* 935 P.2d 484, 489 (Utah 1997).

 The State may not introduce evidence of "other crimes, wrongs or acts ... to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). However, such evidence is admissible to prove "motive ..., intent ..., or absence of mistake or accident." *Id.* Before admitting such evidence, the trial court must find that it is a necessity, that it is highly probative regarding a material issue related to the crime charged, and that these two factors outweigh its prejudicial impact. *Doporto,* 935 P.2d at 490.

Pearson argues that the Indiana drug incident was a "closed chapter" because no charges were pending at the time of this crime. Thus, he argues, it could not have motivated him to flee the Utah officers and evidence regarding it served only to show bad character and to prejudice the jury unfairly against him. The State took the position at trial that Pearson ran from the Utah police because he wished to avoid any further involvement or forced cooperation with the Indiana police. Kennedy's testimony supported this view, and Pearson himself testified that the drug incident constituted part of his reason for leaving Indiana and running from the Utah officers.

We agree with the trial judge that the evidence was necessary and relevant to the question of motive and intent. This case posed no question about Pearson's identity or his acts. The only question for the jury was whether he intended to kill the officer or did so recklessly. The more reasons Pearson had to kill the officer and thus evade capture and future dealings with law enforcement, the more plausible was the State's theory that he did so intentionally rather than recklessly. We also agree that the necessity and probative value of the evidence exceeded its potential prejudicial effect. The prior crime was quite minor in relation to the charged crime. The evidence showed that Pearson was caught selling one marijuana cigarette and subsequently cooperated with the Indiana police to avoid prosecution. It certainly did not suggest a proclivity for violence or even a significant criminal character. Also, the use made of the evidence at trial was minimal; the prosecution did not call the Indiana officer to testify, and did not mention the incident in closing argument. Defense counsel did not even seek a limiting instruction. These factors all suggest that the evidence was not prejudicial as to bad character but was relevant and important to the issues

of motive and intent. We affirm the trial court's ruling.

## V. PROSECUTORIAL MISCONDUCT

The standard of review for rulings on motions for mistrial due to prosecutorial misconduct is abuse of discretion. "[B]ecause the trial court is in the best position to determine an alleged error's impact on the proceedings, we will not reverse . . . absent an abuse of discretion." *State v. Hay*, 859 P.2d 1, 6 (Utah 1993). Pearson claims that the prosecutor acted improperly in "threatening" Kennedy regarding his testimony during pretrial interviews and in making remarks during closing argument about shooting rabbits from a truck and its implications for the accuracy of Pearson's aim.

Pearson contends that the prosecution interfered with his right to present a defense by conducting unrecorded interviews with Kennedy in which it threatened Kennedy's chances for parole if he changed his story. The failure to record the interview was not misconduct. There was a stipulation between the parties requiring the defense to record its interviews with Kennedy, but it did not apply to the State. Furthermore, we are not persuaded that the prosecution acted improperly in warning Kennedy about the repercussions of changing his version of the events surrounding the crime. Kennedy gave a statement about the crime on the night it occurred and repeated his statement the following day. He subsequently accepted a plea bargain from the State in return for his agreement to testify truthfully at trial. The evidence regarding the pretrial exchange shows that the prosecutor's "threat" was to write a negative letter to the parole board if Kennedy failed to tell the truth. Kennedy himself agreed with this characterization. Courts have declined to find error where plea agreements require witnesses to testify truthfully. *See United States v. Ter-zado–Madruga*, 897 F.2d 1099, 1108 (11th Cir.1990). A plea agreement requiring truthful testimony does not deprive a defendant of a potential witness or render the testimony inherently unreliable. Here the prosecutor simply made explicit one of the consequences of a breach of the plea agreement by the witness; the threatened consequence was neither illegal nor unwarranted.

Finally, nothing in the record indicated that Kennedy was in fact anything but truthful in his trial testimony. The defense itself argued that Kennedy's story was true and that Kennedy was a credible witness. We find no basis for concluding that the trial judge abused his discretion in refusing to grant a mistrial on this issue.

The prosecutor's closing argument is more problematic. He said:

> Now, I imagine it's pretty hard to shoot out of a moving vehicle hanging out a window. And I think it would be tough to hit what you were aiming at. I don't know if any of you have done this. And it's been long enough ago that I feel safe in admitting this. But we used to hunt a lot out of the back of moving pickups. And we would hunt rabbits. When you are in a moving vehicle and you are shooting at something as you drive by, it's pretty hard to hit. But we had automatic .22s like this. What you do is, you aim as best you can and then you fire as rapidly as you can, because you know the more lead you spit out at the rabbit the more likely you are to hit it and kill it. And that's just what Jason Pearson did.

A prosecutor's comments constitute misconduct when they call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict. If the prejudice is such that there is a reasonable likelihood the jury would have reached a more favorable result absent the comments, we will reverse. *See State v. Speer*, 750 P.2d 186, 190 (Utah 1988).

These remarks clearly called the jury's attention to facts outside the evidence. The remarks were particularly improper in light of the trial judge's refusal to permit Pearson to offer his simulation evidence during the trial. Inasmuch as defendant was prevented from offering evidence tending to show that his shooting could have been very accurate had he intended it to be, the prosecutor's offering a factual assertion based on

his own experience that "when you are in a moving vehicle and you are shooting at something as you drive by, it's pretty hard to hit.... What you do is, you aim as best you can and then you fire as rapidly as you can, because you know the more lead you spit out ... the more likely you are to hit [the rabbit] and kill it" was egregious.

■ On the other hand, the prosecutor made no effort to hold himself out as an expert, and he addressed matters that are within the general realm of human experience and common sense. Furthermore, the court's instructions to the members of the jury had already generally informed them that the arguments of counsel do not constitute evidence and that they were to rely only on the evidence in reaching factual conclusions. No reasonable listener should have believed that the prosecutor's personal experience was relevant. Given the trial judge's privileged position in assessing the impact of these improper remarks in the overall context of the trial and the closing argument, we accept his evaluation. We do not believe that these brief and obviously irrelevant remarks were likely to prejudice the outcome of the jury's deliberations.

## VI. SIMULATION EVIDENCE

■ Pearson argues that because the only issue in this case was intent, and because his simulation evidence would have tended to show that he would have been more accurate in aiming his shots if he had intended to kill, exclusion of that evidence prevented him from "developing his theory of his defense," thereby giving rise to a due process violation. Pearson failed to mention the due process argument at trial, however, and thus waived our review. See State v. Anderson, 789 P.2d 27, 29 (Utah 1990).

■ Pearson also argues that the exclusion of his simulation evidence was error under Utah Rule of Evidence 702. Regarding the admission or exclusion of expert testimony, the trial court has a wide measure of discretion. See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co., 909 P.2d 225, 233 (Utah 1995). On appeal, this court will "sustain a trial court's

evidentiary ruling on any available ground, even though it may be one not advanced below." State v. Rimmasch, 775 P.2d 388, 400 (Utah 1989). Rule 702 says, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Once the court concludes that the evidence is admissible under rule 702, it must then determine if the probative value of the evidence exceeds its potential for harm under rule 403, i.e., its potential to confuse or mislead the jury, cause delay, or waste time. Id. at 398–99 n. 8.

The risks of admitting the expert's testimony in this case clearly exceeded the testimony's probative value. The simulation bore only a limited resemblance to the facts of the case. For example, in the simulation, the shooter rode in a truck going 45 miles per hour on a country road and shot a gun out of the passenger-side window at a target thirty feet away. In reality, defendant shot at police officers who were about 120 feet away, from the window on the driver's side, in a car going 75 miles per hour on Interstate Highway 70. Even with mathematical calculations to adjust for the difference in distances, the expert admitted that the operation of adrenaline on the shooter and variations in the wind could seriously affect the shooter's ability to aim in ways that could not be measured.

This court made the following observation in State v. Rimmasch:

[I]f the scientific proof is based on undeniably valid scientific premises, has a high degree of power to accurately determine the existence or nonexistence of a fact in issue, and is easily replicable and its application to similar situations has been tested and validated often, then the dangers of unfair prejudice, confusion of the issues, misleading the jury, etc., attendant to its introduction would have to be great indeed to preclude its admission. But if there were weaknesses in the testimony on some or all of these points, then it would be relatively easier to show that the dangers

of admission outweighed the probativeness of the testimony.

*Rimmasch,* 775 P.2d at 399 n. 8 (citations omitted). The expert in this case testified that he had never performed a simulation involving shooting from a car before, only simulations with cars alone. The record does not reference any other experiments of this nature conducted by other experts. Although the calculations made by the expert appear well-grounded in physics and mathematics, they account for only some of the variations, e.g., distance from the target and sway of the trailer. The expert failed to adjust for the effect of winds generated by automobile speed and the effect of adrenaline. Moreover, there were numerous significant differences between the simulation scenario and the real events. Although, as defendant argues, exact duplication is not necessary, so many aspects of this experiment differed from the event that the results of the experiment do not prove much. Thus the evidence did not serve a significant probative function.

 With regard to unfair prejudice, [a]mong the important variables are the nature of the evidence offered, the quality of the other evidence available to the finder of fact, and the centrality of the issue to which the scientific evidence is directed.... "[W]hen the nature of the technique is more esoteric, as with some statistical analyses and seriologic tests, or when the inferences from the scientific evidence sweep broadly or cut deeply into sensitive areas, a stronger showing of probative value should be required."

*Rimmasch,* 775 P.2d at 399 n. 8 (quoting McCormick, *McCormick on Evidence,* § 203, at 609 (E. Cleary ed., 3d ed.1984)). This evidence did not satisfy the *Rimmasch* criteria, and the trial court properly excluded it.

The judgment of conviction is affirmed.

ZIMMERMAN, C.J., STEWART, Associate C.J. and RUSSON, J., concur in Justice DURHAM's opinion.

HOWE, Justice, concurring:

I concur. I write only to explain that there was no basis in the law to give an instruction on manslaughter. Defendant contended that he acted recklessly, which if found to be true, would ordinarily support only a conviction of manslaughter. However, because his reckless conduct occurred while he was assaulting a peace officer or while he was interfering with the officer while making a lawful arrest, reckless conduct is, under those circumstances, elevated from manslaughter to murder. Utah Code Ann. § 76–5–203(1)(e). He was given such an instruction on "peace officer" murder. Thus defendant received all he was entitled to in the jury instructions. The jury could have found his conduct reckless, but under the peculiar circumstances of this case, that would have made him guilty of murder, not manslaughter.