STATE of Utah, Plaintiff and Appellee,

v.

**Douglas Robert PAYNE, Defendant and Appellant.**

**No. 971207–CA.**

Court of Appeals of Utah.

Aug. 6, 1998.

---

Catherine L. Begic, Susanne Gustin–Furgis, John O'Connell, Jr., Salt Lake Legal Defender Association, Salt Lake City, for Defendant and Appellant.

Jan Graham, Atty. Gen., and Laura B. Dupaix, Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, WILKINS and ORME, JJ.

## OPINION

ORME, Judge:

Douglas Robert Payne appeals his conviction for lewdness involving a child, a class A misdemeanor, in violation of Utah Code Ann. § 76–9–702.5 (1995).[1] His primary challenge concerns the trial court's refusal to instruct the jury on lesser included offenses. Because the trial court's only errors were harmless, we affirm.

## FACTS

■ Payne appeals from a jury verdict. Accordingly, "we recite the facts in a light most favorable to the jury's verdict, 'but present conflicting evidence to the extent necessary to clarify the issues raised on appeal.'" State v. Vigil, 922 P.2d 15, 18 (Utah Ct.App.1996) (quoting State v. Winward, 909 P.2d 909, 910 (Utah Ct.App.1995)).

Before July 15, 1994, Payne had been a close family friend of the six-year-old victim and her mother. On that evening, Payne attended an informal gathering hosted by friends of Payne and the victim's mother. Also present at this gathering were the victim, her mother, and the hosts' children, including their twelve-year-old son. During the evening, Payne, the twelve-year-old, and the victim were alone in the living room,

---

1. Because it materially differs from the version currently in effect, we cite the codification of section 76–9–702.5 in effect at the time of the incident in question. For all other statutory provisions, we cite the most recent codifications.

when Payne began to tickle and wrestle with the victim. Payne then held the victim upside down by her feet with his left hand. While watching this, the twelve-year-old saw Payne rub the victim's genital area, over her clothing, for four to five seconds. Unsure what to do, he went to his bedroom where he stayed until Payne left.

After the twelve-year-old left the living room, Payne and the victim sat beside each other on the couch to watch a movie. While sitting next to the victim, Payne reached underneath her shorts and underwear and, using two fingers, fondled her vagina for four to five minutes. The victim testified that it stung when Payne did this.

After Payne touched her, the victim went to the dining room and told her mother that she was tired and wanted to go home. Once they were outside the house, the victim told her mother what Payne had done. Shortly thereafter, Payne approached the victim and her mother, asking them if they wanted a ride home. The mother confronted Payne with what the victim had told her, and Payne denied any wrongdoing and drove off. Minutes after Payne left, the twelve-year-old told his mother what he had witnessed Payne doing to the victim.

When she and the victim arrived at their home, the victim's mother called a female friend, who then came over. Later that evening, the mother called the police. One of the responding police officers was Officer Karen Gilbert, who drove the victim, her mother, and her mother's friend to Primary Children's Medical Center. At the hospital, Gilbert took the victim to a private room and asked the mother and her friend to leave them alone to talk. When they were alone, Gilbert asked the victim why she was at the hospital and what had happened to her. In response, the victim recounted what Payne had done. To confirm her understanding of the victim's account, Gilbert repeated it, allowing the victim to make any corrections. Although she later prepared a written report of this interview, Gilbert did not record the interview. Gilbert took a few notes during the interview, writing them on her hand or arm. Immediately after Gilbert finished her interview, Dr. Douglas Nelson examined the victim. The victim complained of soreness around her genital area and told Nelson that someone had touched her private parts. Nelson's examination revealed that the victim's genital area was reddened, irritated, and painful to the touch. At trial, Nelson testified that these symptoms were on an area of the genitalia that is easily injured. He acknowledged that such an injury could be caused by physical activities in which straddling occurs.

On July 26, 1994, Detective Carl Voyles interviewed the victim to verify Gilbert's interview report and the pertinent portions of the victim's medical records. Voyles conducted the interview at the victim's home, in the presence of others, and did not record the interview. At trial, Voyles testified about the general course of his investigation but did not testify as to what the victim told him during the interview.

On August 4, 1994, the State charged Payne with sexual abuse of a child, a second degree felony, in violation of Utah Code Ann. § 76–5–404.1 (Supp.1997). Before trial, Payne notified the prosecution that he would be calling Dr. Vickie R. Gregory, a forensic neuropsychologist, to offer expert testimony that Gilbert and Voyles used improper techniques while interviewing the victim.

At a hearing held during trial, but outside the jury's presence, the prosecution asked that the trial court exclude Gregory's testimony. The prosecution argued that Gregory's testimony was irrelevant, was of questionable evidentiary value, and impermissibly commented on the victim's veracity. In response, Payne called Gregory to proffer her testimony. Gregory testified that, when interviewing children who might be victims of sexual abuse, an interviewer should make an audio or video recording of the interview, and assess the child's mental ability, knowledge of sexuality, and candor. Gregory also testified that an interviewer should avoid leading questions and conduct the interview alone with the child to avoid parental cues. On cross-examination, Gregory conceded that she had not directly evaluated the victim, and that she based her opinions on her general knowledge and her observations at trial.

The trial court granted the prosecution's motion to exclude Gregory's testimony. The court based this decision on its findings that the testimony (1) would not be helpful as required by Rule 702 of the Utah Rules of Evidence, (2) lacked the scientific basis .required by Utah case law, and (3) would be more prejudicial than probative and thus inadmissible under Rule 403 of the Utah Rules of Evidence.

At trial, Payne's counsel cross-examined both Gilbert and Voyles about the shortcomings of their interviews with the victim. In particular, Payne's counsel scrutinized Gilbert's failure to take written notes of her interview, other than on her hand or arm, and her failure to follow any specific procedures for interviewing child witnesses, such as ascertaining the victim's intelligence and candor. Payne's counsel also questioned Voyles about his allowing others to be present during his interview with the victim. Finally, Payne's counsel questioned both Gilbert and Voyles regarding their failure to record their interviews, emphasizing that this failure prevented a determination of whether, and in what respects, the interviews were properly conducted.

Payne again sought to elicit Gregory's testimony in rebuttal to Gilbert's testimony regarding her interview with the victim and to Nelson's testimony regarding statements the victim made during his examination. The trial court denied Payne's requests, standing by its original decision to exclude Gregory's testimony. Payne called no other witnesses.

In closing argument, Payne's counsel recounted the shortcomings of Voyles's and Gilbert's interviews with the victim, denouncing both their failure to assess the victim's intelligence and candor and their failure to record the interview. These foibles, Payne's counsel urged, created sufficient reasonable doubt of Payne's guilt. Also creating reasonable doubt, Payne's counsel argued, was Nelson's testimony that the victim's contusions were in an easily injured location and sustained during a time when Payne and the victim had been roughhousing. Payne's counsel asserted that inadvertent contact during this vigorous play session could easily have caused these injuries.

The trial court instructed the jury that it could find Payne guilty or not guilty of sexual abuse of a child, or the lesser included offense of lewdness involving a child. Payne objected, arguing that the crimes of gross lewdness and child abuse also qualify as lesser included offenses of sexual abuse of a child, and that the court should additionally instruct the jury on these offenses. The court declined to instruct the jury on gross lewdness or child abuse.[2] The jury convicted Payne of lewdness involving a child.

2. Although it gave no reason for refusing to instruct the jury on child abuse, the trial court based its refusal to instruct the jury on gross lewdness on a mistake of law. When Payne requested an instruction on gross lewdness, both he and the prosecution mistakenly represented to the court that, at the time in question, the gross lewdness statute applied only to victims older than the age of fourteen. The court based its refusal to give a gross lewdness instruction on this misstatement.

However, an amendment that was effective on May 2, 1994—two months before the evening in question—removed from the crime of gross lewdness the element that the victim be over fourteen. See 1994 Utah Laws, ch. 131, § 1, 593, 593; Utah Code Ann. § 76–9–702(3) (Supp. 1997). This amendment was likely in response to language in this court's ruling in State v. Vogt, 824 P.2d 455 (Utah Ct.App.1991), which restricted lewdness involving a child under Utah Code Ann. § 76–9–702.5 to "the exposing of a child to sexual activity" while excluding "the actual touching of the victim" from the statute's scope. Id. at 458 (emphasis in original). Realizing that this interpretation of the lewdness involving a child statute "would protect children fourteen or older from being [improperly] touched ... but children under fourteen would not be protected against this same behavior," this court later disavowed "any language in Vogt that can be read to exclude touching conduct from those behaviors actionable under section 76–9–702.5." State v. Perry, 871 P.2d 576, 580 (Utah Ct.App.1994). Consequently, given the Legislature's amendment to section 76–9–702 and this court's ruling in Perry, the same conduct—touching the genitals of a child under fourteen—may be criminally actionable under two different lewdness statutes.

On appeal, Payne, perhaps mindful of the invited error doctrine, does not raise the trial court's erroneous basis for refusing to instruct the jury on gross lewdness. Because he does not, and because we "may affirm the trial court's decision on any proper grounds, even though the trial court assigned another reason for its ruling," State v. Bryan, 709 P.2d 257, 260 (Utah 1985), we need not further address the trial court's erroneous basis for refusing to give a gross lewdness instruction.

## ISSUES ON APPEAL

Payne appeals his conviction, arguing the trial court erroneously excluded Gregory's testimony under Rules 403 and 702 of the Utah Rules of Evidence. Payne also contends the trial court erroneously failed to instruct the jury on the offenses of gross lewdness and child abuse.

## STANDARDS OF REVIEW

■ "The trial court has wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard." *State v. Larsen,* 865 P.2d 1355, 1361 (Utah 1993). In contrast, "whenever a defendant requests a jury instruction on a lesser included offense," specific legal standards must be followed and "the trial court has no discretion in the matter." *State v. Simpson,* 904 P.2d 709, 711 (Utah Ct.App.1995). Accordingly, "[t]he refusal to give a requested jury instruction on a claimed lesser included offense is a legal determination, which we review for correctness," without deference to the trial court. *Id.*

## EXCLUSION OF GREGORY'S TESTIMONY

■ To be admissible, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702. Under this rule, no expert testimony is required "[i]f the matter at issue in the case is one which . . . is within the knowledge of the average trier of fact, [or] 'if the other evidence is such as to present the issues in terms which the jury can be expected to understand.'" *Salt Lake City Sch. Dist. v. Galbraith & Green, Inc.,* 740 P.2d 284, 289 (Utah Ct.App.1987) (quoting *Hall v. State,* 290 Or. 19, 619 P.2d 256, 261 (1980)).

■ Gregory's testimony concerned the preferability of a recorded interview that accommodates the child-interviewee's mental ability, sexual knowledge, and candor, and that is free from leading questions and parental cues. The jury could reasonably be expected to appreciate these concerns, which were adequately called to its attention through cross-examination and closing argument, without the assistance of expert testimony. Under these circumstances, and especially because the court heard the testimony Gregory proposed to offer before making its decision, we cannot say the trial court abused its discretion in excluding Gregory's testimony as unhelpful under Rule 702.[3]

## REFUSAL OF LESSER INCLUDED OFFENSE INSTRUCTIONS

■ In *State v. Baker,* 671 P.2d 152 (Utah 1983), the Utah Supreme Court formulated a two-part "evidence-based" analysis for determining whether to grant a defendant's request for jury instructions on a claimed lesser included offense. First, the trial court must determine whether the offense for which the defendant seeks instruction is a lesser included offense of the crime charged. *See id.* at 158–59. *See also* Utah Code Ann. § 76–1–402(3)(a) (1995). Second, the trial court must determine whether a rational basis exists on which the jury could acquit the defendant of the offense charged and convict of the lesser offense. *See Baker,* 671 P.2d at 159. *See also* Utah Code Ann. § 76–1–402(4) (1995). Payne argues that, under the two-part *Baker* analysis, he was entitled to jury instructions on both gross lewdness and child abuse.

### A. Gross Lewdness

■ Regarding gross lewdness, Payne contends that both prongs of the *Baker* test were satisfied. The State agrees, but asserts the trial court was not required to instruct the jury on gross lewdness because the court's lewdness-involving-a-child instruction gave Payne the full benefit of reasonable

---

**3.** We have considered Payne's other objections to the trial court's exclusion of Gregory's testimony and determine them to be without merit. "An appellate court has discretion as to the nature and extent of the opinions it renders and we need not 'address in writing each and every argument, issue, or claim raised and properly before us on appeal.'" *State v. Tucker,* 800 P.2d 819, 824 n. 9 (Utah Ct.App.1990) (quoting *State v. Carter,* 776 P.2d 886, 888 (Utah 1989)).

doubt and applied more specifically to his conduct. The State is essentially correct.

A person is guilty of lewdness involving a child if the person commits certain enumerated acts, not applicable here, or "performs any other act of gross lewdness, under circumstances which he or she should know will likely cause affront or alarm, to, on, or in the presence of another who is under 14 years of age." Utah Code Ann. § 76–9–702.5(1)(f) (1995). A person is guilty of gross lewdness if the person "intentionally touches ... any part of the genitals of another person ... and the actor's conduct is under circumstances the person knows or should know will likely cause affront or alarm to the person touched." Id. § 76–9–702(3) (Supp.1997).

For the purposes of this case, lewdness involving a child under section 76–9–702.5(1)(f) and gross lewdness under section 76–9–702(3) concern the same mens rea and conduct. The only difference between the two offenses is the victim's age—section 76–9–702(3) prohibits touching any person's genitals and section 76–9–702.5(1) prohibits touching the genitals of a child under fourteen. Consequently, faced with both offenses and a juvenile victim, and absent a bona fide dispute as to whether the victim was under fourteen, a jury would have no rational basis to convict Payne of gross lewdness and acquit of lewdness involving a child. Thus, having already instructed the jury on lewdness involving a child, the trial court did not err in refusing to instruct the jury on gross lewdness.

### B. Child Abuse

In comparing the elements of an allegedly included offense and the charged offense under the first Baker prong, "our supreme court has recognized that 'some crimes have multiple variations, so that a greater-lesser relationship exists between some variations of these crimes, but not between others.'" State v. Simpson, 904 P.2d 709, 713 (Utah Ct.App.1995) (quoting State v. Hill, 674 P.2d 96, 97 (Utah 1983)).

"A person commits sexual abuse of a child if ... the actor touches the ... genitalia of any child ... with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person...." Utah Code Ann. § 76–5–404.1(1) (Supp.1997). A person commits child abuse if he or she intentionally, recklessly, or negligently inflicts upon a child "a bruise or other contusion of the skin ... [or] any other condition which imperils the child's health or welfare." Id. § 76–5–109(1)(c) (i), (iv). See id. § 76–5–109(3). Although there are variations in the elements of these two offenses, a greater-lesser relationship clearly exists between some of these variations.

■ For instance, in this case the State offered evidence showing that, due to Payne's actions, the victim's genital area was reddened, irritated, and painful to the touch. Consequently, under these facts, establishing that Payne touched the victim's genitalia with intent to cause substantial emotional or bodily pain—a variation of the elements of sexual abuse of a child—also tends to prove Payne intentionally inflicted a bruise, contusion, or other deleterious condition on the victim—a variation of the elements of child abuse. In other words, in this case, the same or less than all the facts necessary to prove sexual abuse tend to prove the elements of child abuse, and the offenses thus have the necessary overlap to satisfy the first Baker factor. Cf. State v. Jones, 878 P.2d 1175, 1177–78 (Utah Ct.App.1994) (holding assault is lesser included offense of forcible sexual abuse).

■ We now turn to the second Baker factor. In doing so, we examine whether the evidence presented a rational basis for convicting Payne of child abuse while acquitting him of both child sexual abuse (with which he was charged) and lewdness involving a child (of which he was actually convicted). See Baker, 671 P.2d at 157–58. In making this determination, trial courts have little or no leeway. If

the evidence is ambiguous and susceptible to alternative explanations, the trial court must give the lesser included offense instruction if any one of the alternative interpretations provides both a rational basis for a verdict acquitting the defendant of

the offense charged and convicting him of the included offense.

... [T]his standard does not allow the court in jury cases to weigh[ ] the credibility of the evidence offered by a defendant in support of his or her request for a lesser included offense instruction.... It follows that in determining whether a rational jury could acquit on the greater charge and find guilt on the lesser charge, the court must view the evidence and the inferences that can be drawn from it in the light most favorable to the defendant.

*State v. Velarde,* 734 P.2d 449, 451 (Utah 1986) (footnotes omitted).

It was undisputed that Payne and the victim had been wrestling, tickling, and otherwise roughhousing. At trial, Payne postulated that the victim's injuries were accidentally caused by roughhousing or wrestling, rather than by improper touching. This theory found support in Dr. Nelson's testimony that the victim's injuries were in a location that can be easily injured during physical activities, such as straddling.

This evidence, while not compelling such a result, would permit the jury to infer that, rather than touching the victim's genitalia knowing it would cause her affront or alarm, Payne intentionally, recklessly, or negligently inflicted a contusion or other condition which imperiled the victim's health or welfare.[4] We draw this conclusion, as we must, without weighing the evidence supporting Payne's request for a child abuse instruction, and viewing this evidence in the light most favorable to Payne. Viewed in this way, the evidence—or at least inferences which could be drawn from it—provides a rational basis for a verdict acquitting Payne of lewdness involving a child and convicting him of the lesser included offense of child abuse. Therefore, the trial court erroneously refused to instruct the jury on child abuse.

■■■ However, even if a trial court errs in refusing to instruct a jury on a lesser included offense, reversal is appropriate only where the error is prejudicial. *See State v. Piansiaksone,* 954 P.2d 861, 871–72 (Utah 1998) (concluding that any error in refusing lesser included offense instruction was harmless); *State v. Pearson,* 943 P.2d 1347, 1350–51 (Utah 1997) (same); *State v. Gotschall,* 782 P.2d 459, 464 (Utah 1989) (same). "For an error to require reversal, 'the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict.' " *State v. Jacques,* 924 P.2d 898, 902 (Utah Ct.App.1996) (quoting *State v. Knight,* 734 P.2d 913, 920 (Utah 1987)).

■■■ In applying this standard in other contexts, we have reversed when the defendant and the State presented conflicting testimony, especially when no physical evidence corroborated the State's case. *See, e.g., State v. Iorg,* 801 P.2d 938, 941–42 (Utah Ct.App.1990). In contrast, reversal is inappropriate when, for example, compelling evidence supports the defendant's conviction. *See State v. Willett,* 909 P.2d 218, 224 (Utah 1995). In this case, then, we must decide whether, even though there was a rational basis in the evidence for giving the requested child abuse instruction, the evidence of the greater offense was so strong that there is no substantial likelihood of a different outcome had the requested instruction been given.

The victim testified that Payne rubbed her genital area and that this touching was outside the course of wrestling or other roughhousing with Payne. The twelve-year-old independently reported his observations to his mother and his eyewitness testimony corroborated the victim's account, as did the testimony of the victim's mother and the physical evidence described by Dr. Nelson. Payne presented no contradictory evidence. Instead, he argues that the jury could have convicted him of child abuse based on inferences that could be drawn from the victim's testimony, i.e. that some straddling or similar conduct might have occurred during his wrestling with the victim, and from Nelson's testimony regarding the location, severity,

---

4. The State claims Payne sought only an instruction for reckless child abuse at trial and thus waived an instruction for intentional or negligent child abuse. However, the record indicates that, although Payne's counsel was unsure of the mental states encompassed by the child abuse statute, both Payne and the State contemplated intentional, reckless, and negligent child abuse when Payne requested an instruction for this offense. *See* Utah Code Ann. § 76–5–109(3) (Supp.1997).

and possible causes of the victim's injuries. But to find Payne guilty of child abuse rather than lewdness involving a child, the jury would have to reject the consistent testimony of two witnesses who independently registered their concerns with adults immediately after the incident and who, as described by other witnesses, consistently stuck by their stories. The jury would have to reject the credibility of these witnesses in favor of mere inferences that are conceivable from the evidence but are by no means compelled by it. Under these circumstances, we see no reasonable likelihood that, had the court properly instructed it on child abuse, the jury would have convicted Payne of this offense rather than lewdness involving a child. In other words, the likelihood of a different outcome is not sufficiently high to undermine our confidence in the verdict. Therefore, the trial court's refusal to instruct the jury on child abuse, while incorrect, was harmless error.

## CONCLUSION

The trial court did not abuse its discretion in excluding Gregory's testimony, and we therefore affirm the court's decision to do so. Also, because no rational basis exists on which the jury could convict Payne of gross lewdness, we affirm the trial court's refusal to instruct the jury on this offense. Finally, although both *Baker* factors were met for child abuse, the trial court's refusal to instruct the jury on that offense, while erroneous, was harmless.

Affirmed.

DAVIS, P.J., and WILKINS, Associate P.J., concur.