2001 UT App 68

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jose Mario JIMENEZ, Defendant and Appellant.**

No. 20000044–CA.

Court of Appeals of Utah.

March 8, 2001.

Linda M. Jones, David V. Finlayson, and David B. Shapiro, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges GREENWOOD, P.J., JACKSON, Associate P.J., and DAVIS, J.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Jose Mario Jimenez appeals from his conviction after a jury trial of one count of manslaughter, in violation of Utah Code Ann. § 76–5–205 (1996), and two counts of attempted manslaughter, in violation of Utah Code Ann. §§ 76–5–205, –4–101 (1995).

¶ 2 Defendant argues that the trial court erred by denying his motion to declare a mistrial after the prosecutor asked four improper questions during cross-examination and made improper remarks during closing argument. In addition, defendant contends that the cumulative effect of these errors denied him a fair trial. We affirm.

## BACKGROUND

¶ 3 In the early hours of October 20, 1996, defendant was involved in an altercation with Anthony Montoya (Montoya) and Manuel Rios (Rios) outside of a 7–11 convenience store. Montoya, Rios, and Henry David Miera (Miera) drove to the 7–11 a few minutes before defendant. When defendant arrived at the 7–11, Rios had gone inside to use the bathroom, Montoya was standing outside the front doors of the store, and Miera was waiting in the car. Defendant got out of his car with a gun in his pant's waistband and approached Montoya in front of the store. The two exchanged words. When Rios joined them, he punched defendant, causing him to fall to the ground. Defendant got up, took the gun from his waistband, and shot at Montoya and Rios. Defendant also shot at Miera who was sitting in his car near the altercation. Miera died from the gunshot wounds. Defendant fired a total of seven rounds. Most of the incident, including the initial altercation and the shooting, was recorded by the store's security camera.

¶ 4 Defendant drove off immediately after the shooting. He then went to a friend's house and told her that he had just killed somebody. Defendant was not apprehended for almost two years.

¶ 5 At trial, the parties entered into a stipulation, which was adopted by the court, that the State would not address defendant's prior convictions except to rebut any character evidence offered by defendant. The jury acquitted defendant of murder, under Utah Code Ann. § 76–5–203 (1996), and attempted murder, under Utah Code Ann. §§ 76–5–203, –4–101 (1996), but convicted him of one count of manslaughter and two counts of

attempted manslaughter, under Utah Code Ann. §§ 76–5–205, –4–101 (1999).

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Defendant argues the trial court erred in not granting his motion for a mistrial when the prosecutor engaged in misconduct, first, during his cross-examination of defense witnesses and, second, during his closing argument. "We review rulings on motions for a mistrial based on prosecutorial misconduct for abuse of discretion." *State v. Reed*, 2000 UT 68, ¶ 18, 8 P.3d 1025; *see also State v. Harmon*, 956 P.2d 262, 276 (Utah 1998) (stating standard is met only if error is "substantial and prejudicial").

¶ 7 Defendant also argues that the cumulative effect of these errors requires reversal. "Under the cumulative error doctrine, we will reverse only if 'the cumulative effect of the several errors undermines our confidence ... that a fair trial was had.'" *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (citation omitted).

## ANALYSIS

### I. Denial of Motion for a Mistrial During Cross Examination

¶ 8 Defendant claims that the prosecutor acted improperly when, on four separate occasions, the prosecutor asked improper questions during cross examination. Specifically, defendant challenges one question directed to defendant concerning his use of aliases; one question directed to defendant's wife concerning whether she knew it was illegal for defendant to carry a concealed weapon; one question directed to defendant's wife concerning whether she assisted in concealing defendant the night after the incident; and one question directed to a medical expert concerning past violence to which defendant may have been exposed.

¶ 9 We are not convinced that the trial court abused its discretion in denying defendant's motion for a mistrial based on these questions. "A prosecutor's comments constitute misconduct when they call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict." *State v. Pearson*, 943 P.2d 1347, 1352 (Utah 1997).

¶ 10 None of the prosecutor's questions was so substantial and prejudicial that there was a reasonable likelihood that, absent the questions, the result of the trial would have been more favorable to defendant. *See id.* First, defendant complained that the prosecutor asked a question about defendant's use of aliases. However during his direct examination, defendant himself, first mentioned that he had used an alias to avoid payment for medical care because he claimed he could not afford it. Defendant's statement left the impression that he used an alias only to get medical treatment which he could not otherwise afford, and the prosecutor had a right to challenge that assertion as bearing on defendant's credibility. Furthermore, defendant objected to the prosecutor's question, a side bar was held, the question was never answered, and the topic was not revisited during the trial.

¶ 11 Second, defendant argues the prosecutor's question to his wife about whether she knew it was illegal for defendant to possess a concealed weapon amounted to misconduct.[1] Defendant objected to this question on the basis that it called the jury's attention to an alleged criminal act that was not charged. The judge sustained the objection, and the question went unanswered. Here, the jury already knew that defendant was carrying the gun. Thus, the question in and of itself was not so prejudicial to rise to the level of misconduct.

¶ 12 Third, defendant contends that the prosecutor should not have asked his wife whether she participated in concealing defendant from the police after the incident. Defendant objected to this question because it

---

1. The prosecutor asked, "Did you know when you were at [the Me Mexico dance club] [your husband] had a concealed gun on him?" Ms. Jimenez answered, "No." The prosecutor then asked, "Did you know that the concealed weapon under that circumstance would be a crime in and of itself?"

could cause his wife to incriminate herself. The trial court sustained this objection. The question was rephrased, defendant's wife was asked whether she observed defendant concealing himself to avoid arrest after the shooting, and she responded, "No." Nonetheless, this question in no way supports a motion for a declaration of a mistrial. Specifically, the jury knew that defendant was not arrested until almost two years after the incident, the fact that defendant fled is admissible to show consciousness of guilt, and defendant did not claim that the question was prejudicial as a basis for his objection.

■ ¶ 13 Fourth, defendant complains about the prosecutor's question to the medical expert about whether defendant had a history of violence.[2] The expert stated that he had asked defendant about any history of serious trauma, and defendant had indicated that there was none. There were no follow-up questions. This question in no way could have prejudiced the jury. Defendant raised his prior exposure to a violent act as a defense in this case. Additionally, the medical expert answered the prosecutor's question in the negative. In the context of the expert's answer, the jury was left with the impression that the prior incident was the only prior violent act in which defendant had been involved. Finally, the expert was never asked if defendant committed a violent act.

¶ 14 Overall, none of these questions rise to the level of prosecutorial misconduct. These four isolated questions were asked during the first two days of a four day trial. Defendant put on several other witnesses after these questions were asked, and the State put on a rebuttal case. Therefore, the jury did not hear these questions immediately before deliberations. In addition, the jury rejected the prosecutor's theory of the case and accepted, in part, defendant's version of events, because the jury chose to convict defendant only of the lesser manslaughter charges instead of the murder charges. There is no "reasonable likelihood that in [the question's] absence, there would have been a more favorable result for the Defendant." *Pearson,* 943 P.2d at 1352. Thus, the trial court did not abuse its discretion in denying the motion for a mistrial.[3]

## II. Denial of Mistrial After Closing Arguments

■ ¶ 15 Defendant next argues the prosecutor engaged in misconduct in his closing argument by mentioning what defendant was wearing during the trial. The same standard applies to prosecutorial misconduct during closing argument as to questioning during cross examination. "Prosecutorial misconduct occurs when the prosecutor's comments 'call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict.'" *State v. Reed,* 2000 UT 68, ¶ 18, 8 P.3d 1025 (quoting *Pearson,* 943 P.2d at 1352).

■ ¶ 16 The fact that the prosecutor commented during closing argument on how the defendant looked in court compared to how he looked on the video surveillance tape the day of the incident does not rise to the level of misconduct. This statement does not affect the defendant's "garb of innocence." *See State v. Mitchell,* 824 P.2d 469, 473 (Utah Ct.App.1991). In fact, when a defendant has testified during a trial, it is proper during a closing argument to comment on defendant's credibility and appearance. Thus, the trial court did not abuse its discretion in denying defendant's motion for a mistrial based on this statement.

## III. Cumulative Error

■■ ¶ 17 Defendant argues the cumulative effect of the above alleged errors undermines confidence that he had a fair trial. *See State v. Dunn,* 850 P.2d 1201, 1229 (Utah 1993). "In assessing a claim of cumulative error, we consider all the identified errors, as

---

2. The prosecutor first asked if defendant had informed the expert of "any other history of violence that he has had." He then rephrased the question to address "other history of violence that [defendant] has been involved in."

3. Although the trial court did not sustain two of the objections in front of jury and did not give curative instructions, the questions asked by the prosecutor were not so egregious as to rise to the level of misconduct.

well as any errors we assume may have occurred." *Id.* Here, the evidence against defendant was sufficiently strong for the jury to convict him. The videotape showed the initial confrontation involving defendant as well as defendant shooting at the victims. Thus, we conclude that the cumulative effect of these alleged errors does not undermine our confidence in the essential fairness of the trial.

## CONCLUSION

¶ 18 None of the prosecutor's questions or statements rose to the level of misconduct, and therefore, the trial court did not err in denying defendant's motion for a mistrial. In addition, the cumulative effect of the alleged errors did not undermine the fairness of the trial. Accordingly, we affirm.

¶ 19 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, NORMAN H. JACKSON, Associate Presiding Judge.